399 So.2d 1111 (1981)
James B. MALONEY, et Ux., Appellants,
v.
ATLANTIQUE CONDOMINIUM COMPLEX, INC., and Keith L. Hudkins, Appellees.
No. 80-556.
District Court of Appeal of Florida, Fifth District.
June 24, 1981.
*1112 Stephannie L. DaCosta, Cocoa Beach, for appellants.
William C. Irwin, Cocoa Beach, for appellee Hudkins.
William E. Weller, Cocoa Beach, for appellee Atlantique.
COWART, Judge.
This case involves the exercise of a condominium association member's preemptive right to buy units offered for sale to non-members by other members.
The Declaration of Atlantique Condominium Complex, Inc., provides in part:
Prior to the sale of any interest in any unit, the owner of said unit, except co-owners selling to each other, shall notify the Board of Directors, in writing, of the name, address, business, occupation or employment of the offeror, accompanied with an executed copy of the bona fide offer as hereinafter defined. Members shall have the first right over non-members to accept such sale at the bona fide price and on the terms contained in the notice, provided they so notify the Secretary of the Corporation in writing of acceptance at least ten (10) days after the date of notice, which information the Corporation shall promptly forward to the owner.... (emphasis added)
"Subject to condominium by-laws" the Neals, as owners of a unit, entered into a contract of sale and purchase wherein the Neals agreed to sell their unit to the Maloneys, who were non-owners and non-members. For the purposes of this case this document constitutes a bona fide offer of the Neals to sell. Written notice of the sales contract (offer) was given by the Neals by hand delivery to the secretary of the condominium association on November 27, 1978, and copies were mailed by the association to all members. On December 4, 1978, appellee Hudkins, a non-resident owner-member, mailed an acceptance of the offer to the condominium association's president. On December 7, 1978, the Neals and the Maloneys closed the contracted transaction and the Neals conveyed title to the unit to the Maloneys. On December 8, 1978, appellee Hudkins' letter of "acceptance," exercising his preemptive right to buy under the condominium declaration, was received by the association president and that day delivered to the association secretary. The condominium association, appellee herein, brought suit for a declaratory judgment against the Neals, the Maloneys and the appellee Hudkins and others to have the court construe the condominium declaration and declare that the sale to the Maloneys was void and that Hudkins was entitled to purchase the unit. The parties stipulated that the phrase "at least ten (10) days" in the condominium declaration means "within ten (10) days." The trial court in effect held that Hudkins was entitled to purchase the unit, and the Maloneys appeal.
Within ten days of November 27, 1978, means by the 7th day of December, 1978. If Hudkins' letter of "acceptance" was effective when it was mailed on December 4, 1978, it was timely and he was entitled to buy, the sale to the Maloneys was ineffective and the trial court was correct. However, if Hudkins' letter was effective or operative only as of December 8, 1978, when it was received, it did not constitute a timely acceptance of the Neals' offer to sell nor a timely exercise of Hudkins' preemptive right of first refusal and the judgment below should be reversed. The question is *1113 presented as to whether the so-called "deposit acceptance rule" (under which an acceptance is deemed effective as of the date of deposit in the mail of the acceptance of an offer), applies in this case.
The appellees claim broadly that Florida has adopted the "deposit acceptance rule," citing Morrison v. Thoelke, 155 So.2d 889 (Fla.2d DCA 1963), Green v. Sesac, Inc., 177 So.2d 752 (Fla. 1st DCA 1965), quashed, 189 So.2d 612 (Fla. 1966), Kendel v. Pontious, 244 So.2d 543 (Fla.3d DCA 1971), cert. dismissed, 261 So.2d 167 (Fla. 1972), and Kendel v. Pontious, 261 So.2d 167 (Fla. 1972).
In Morrison, a resident of Florida desiring to buy Florida land from the Thoelkes, who lived in Texas, signed a contract and mailed it to the Thoelkes, who signed the contract and placed it in the mail to Morrison's attorney in Florida. Before the contract was received by Morrison's attorney, the Thoelkes called Morrison's attorney and cancelled and repudiated their acceptance and the contract. However, the Morrisons recorded the contract when it was received and the Thoelkes brought a quiet title suit to have the contract declared void and cleared from their title. The trial court held that the Thoelkes' acceptance was effective only when received and that the contract was void because the Thoelkes had withdrawn their acceptance before it was received. The appellate court reversed, holding that the Thoelkes' acceptance was effective when their acceptance of the contract was placed in the mails. After concluding that there were advantages and disadvantages in applying or not applying the deposit acceptance rule, the Morrison court, in an exhaustive opinion reviewing the historical development of the rule and citing many authorities, including I Corbin on Contracts, § 78 (1950), applied the rule to the facts in that case. However in Morrison the court recognized the basic problem was that "In the formation of contracts inter absentes by post, delay in communication prevents concurrent knowledge of assents and some point must be chosen as legally significant." The court then found that the balance in Morrison tipped to the application of the "deposit acceptance rule" because (1) the offeror had chosen the medium of communication, (2) the offeror is seldom injured by the delay and uncertainty in not knowing whether or not his offer had been accepted; and (3) if any such delay or uncertainty is unacceptable to the offeror he can always expressly condition his offer as to time and to his actual receipt of an acceptance. Morrison makes clear that the logic of its decision related to contracts negotiated by mail and on the considerations detailed above.
In Green the appellate court in construing the application of a taxing statute merely referred to the fact that the trial judge, whose decision was reversed, relied on the deposit acceptance rule.
In Kendel v. Pontious, as in Morrison, a prospective purchaser signed a contract which was mailed to the owner who signed it but, unlike Morrison, the owner did not deposit the contract in the mail but handed it to the owner's attorney on January 17, 1969. The prospective purchaser revoked his offer on that same day and before the acceptance was placed in the mail. The trial court in Kendel, citing Morrison, held that the revocation was effective because, when an offer to purchase is transmitted to the seller by mail, if the offer or contract does not otherwise provide, it will be implied that acceptance will be made by mail. The district court of appeal affirmed and the Florida Supreme Court denied certiorari.
While the owner of a condominium unit in Atlantique can choose the medium by which he communicates his notice (offer) to the board of directors and can thereby prevent delay in commencing the running of the ten day notice, he has neither control over selection of the communication medium by which the association relays his offer to the other owners nor control over the selection by the other owners of their method of communication of notice of the exercise of their preemptive right. Delay and uncertainty impair marketability and are very important and undesirable, both to the unit owner desiring to sell his unit and to a *1114 prospective purchaser. The unit owner should be able to know if any other unit owner has exercised this "right of first refusal" or "preemptive right" within ten days after the date the owner has notified the board of directors of the association so that the unit owner may know with assurance that the restraint on his right to alienate his property is over and that he is free to close his sale pursuant to his conditional offer to (contract with) a third party. If the owner-offeror was required to assume the risk of the delays and miscarriages of the mail he would never know how long he had to wait, particularly where, as here, the option is subject to acceptance by any of many persons living anywhere they choose. If condominium owners who have such preemptive rights choose to live in areas distant from the condominium, which causes the problems that arise from the formation of contracts by mail, they should assume the disadvantages caused by their long distant, absentee ownership and those disadvantages should not be placed upon other owners who desire to sell. Here, since the option is created and controlled by the condominium declaration and the notification of other owners of the offer and the exercise of their option is made to and by the association, the owner-offeror lacks the normal freedom to expressly condition his offer as to time and the actual receipt of an acceptance.
Corbin on Contracts, one of the authorities relied upon in Morrison, in considering option contracts (IA Corbin on Contracts, § 264 (1963)), states:
Must notice of acceptance be received? When contracts are being made by correspondence, it is held in most cases that the contract is consummated at the time and place that the acceptance is mailed. But when, by the terms of an already consummated contract it is provided that one party shall have power to produce certain legal results by giving notice, it is usually held that this means notice received in fact and not merely notice mailed. A landlord's "notice to quit" must be received by the tenant. The power of termination of a contract of employment, or of any other continuing contract, can be effectively exercised only by bringing home notice to the other party, not by merely mailing it to him. In a contract to ship goods as ordered, there is no duty of immediate performance until an order is received. Of course, it is possible in any case for the parties to agree that the mere mailing of a notice shall be sufficient; it is a question of interpretation whether they have in fact so agreed.
If in an option contract the duty of the promisor is conditional on "notice within 30 days", does this mean notice received or notice properly mailed? It is believed that, in the absence of an expression of contrary intention, it should be held that the notice must be received. As above explained, the notice is in one aspect a notice of acceptance of an offer; but in another aspect it is a condition of the promisor's already existing contractual duty. It is more likely to be regarded in this latter aspect by the parties themselves. The rule that an acceptance by post is operative on mailing was itself subjected to severe criticism; and, even though it may now be regarded as settled, it should not be extended to notice of acceptance in already binding option contracts.
For all of these reasons, we find that the considerations found persuasive in Morrison for application of the "deposit acceptance rule" do not apply here and that the better rule, as expressed in Corbin, is that the rule that an acceptance by post is operative on mailing should not be extended to notice of the exercise of existing option contracts, or preemptive rights of first refusal, as is involved in this case. The benefit of this better rule inures to the benefit of all unit owners  when they desire to sell. Accordingly, the judgment below is reversed with directions to enter up judgment in favor of the appellants.
REVERSED AND REMANDED.
DAUKSCH, C.J., and FRANK D. UPCHURCH, Jr., J., concur.