[No. 6337–9–II.   Division Two.   May 16, 1984.]

SAFECO INSURANCE COMPANY, *Respondent,* v. MICHAEL D. IRISH, ET AL, *Appellants.*

*Edward G. Holm* and *Cullen, Holm & Foster,* for appellants.

*Ward J. Rathbone,* for respondent.

REED, J.—Safeco's insured, Michael D. Irish, appeals from a judgment awarding Safeco $5,199.05 plus costs, the amount the company had paid Irish's credit union as loss payee under his policy. We affirm.

The issue is whether Irish's failure to pay a renewal premium for his auto coverage by 12:01 a.m. February 17, 1979, resulted in a lapse of coverage on his Alfa Romeo, which was rendered a total loss on February 16, 1979. We answer in the affirmative.

Since about 1977, Irish had carried a "continuous protection plan" (6–month term) auto policy with Safeco. The policy's current expiration date was December 29, 1978. The policy contained the following standard clause:

AUTOMATIC TERMINATION. If we offer to renew and you or your representative do not accept, this policy will automatically terminate *at the end of the current policy period.* Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

(Italics ours.)

Sometime in December 1978, after preliminary discussions with Safeco, Irish purchased an Alfa Romeo, which he financed through his credit union. He then applied to Safeco for a policy change, substituting the Alfa Romeo for another car and adding the credit union as loss payee. On January 23, 1979, Safeco issued a "Statement of Coverage," effective December 29, 1978 and expiring July 27, 1979. The statement advised Irish his "renewal premium" of $86 was due January 27, 1979. The statement also reflected premium adjustments because of the addition of the sportier car.

Irish failed to pay the renewal premium on January 27. Thereafter, in accordance with its usual practice of giving the insured additional time in which to pay a renewal premium,[1] Safeco mailed Irish a cancellation notice. This notice reminded him that his renewal premium had not been received and that if not received by 12:01 a.m. February 17, 1979, his policy would be "cancelled" at that time.[2] The notice further stated that if the company *received* the amount due before February 17, his insurance would "continue in force."

The notice was mailed to Irish's correct address. Because of a mix–up between him and his brother, Irish was not aware he had not been receiving all his mail until his brother called him on February 15, 1979. About 8 or 9 o'clock on February 16, 1979, Irish drove the Alfa Romeo to his brother's home and was handed an accumulation of mail, including Safeco's notice. According to Irish, he was

---

[1]This notice was not required by statute, as we will demonstrate later herein.

[2]The notice is reproduced herein.

going out the door at about 10 p.m., intending to mail the premium,[3] when he discovered his car had been stolen. Just after midnight the Alfa Romeo was "totaled" in a high–speed chase with the police. Irish never has paid the renewal premium.

## AUTOMOBILE POLICY CANCELLATION NOTICE

*RENEWAL PREMIUM*

has not been received. Perhaps you overlooked it; if so, there's still time to prevent cancellation. If we receive the amount due before the date shown below, your insurance will continue in force. We regret that if payment isn't received your policy will be cancelled at 12:01 AM Standard Time on that date. We value our customers and hope this reminder prevents a lapse in your insurance protection.

| POLICY NUMBER | CANCELLATION DATE | AMOUNT DUE |
|---|---|---|
| H 964887 | FEB' 17 79 | $86.00 |

Irish's credit union, having received in due course its copy of the cancellation notice, contacted Safeco and made arrangements to pay a premium necessary to keep its loss payee coverage in force. Consequently, Safeco paid the balance owed the credit union, $5,199.05. Safeco then brought this action under the subrogation provisions of the policy.[4] Safeco was granted judgment. Irish appeals.

Unfortunately, the issue before us was brought about in great measure because of the form chosen by Safeco to notify Irish that he had an extended period of time in which to reinstate coverage under his lapsed policy. Although denominated a "cancellation" notice, it was, in

---

[3] A deposit in the mails would not have been sufficient; the policy provision requiring *receipt* of the premium controls, unless changed by the course of dealing between the parties. *Thomason v. Schnorr*, 41 Colo. App. 546, 587 P.2d 1205 (1978). There was no evidence of such a course of dealing.

[4] No issue was presented to this court concerning Safeco's right of subrogation.

fact, merely a reminder that (1) Irish had not accepted Safeco's offer to renew, (2) his policy had lapsed, and (3) he was being given an opportunity to reinstate.

The term "cancellation" refers to a unilateral act of the insurer terminating coverage during the policy term. *Cf. Continental Ins. Co. v. Paccar, Inc.*, 26 Wn. App. 850, 614 P.2d 675 (1980), *rev'd on other grounds*, 96 Wn.2d 160, 634 P.2d 291 (1981). Neither RCW 48.18.291, relied upon by Irish, nor his policy provisions governing cancellation apply to a situation where the insured fails to pay a premium as a condition to renewal. *Shelly v. Strait*, 634 P.2d 1017 (Colo. App. 1981); *Sampson v. State Farm Mut. Ins. Co.*, 205 Neb. 164, 286 N.W.2d 746 (1980); *Farmers Ins. Co. v. Hall*, 263 Ark. 734, 567 S.W.2d 296 (1978); *Sereno v. Lumbermens Mut. Cas. Co.*, 132 Ariz. 546, 647 P.2d 1144 (1982). Thus, the general rule is that failure of an insured to pay a renewal premium by the due date results in a lapse of coverage as of the last day of the policy period. *Thomason v. Schnorr*, 41 Colo. App. 546, 587 P.2d 1205 (1978).

Situations involving nonrenewal of continuous private automobile insurance are governed by RCW 48.18-.292(1)(b), which formerly read as follows:[5]

> (1) Each insurer shall be required to renew any contract of insurance subject to RCW 48.18.291 *unless* one of the following situations exists: . . .
>
> (b) The insurer has communicated its willingness to renew in writing to the named insured, and has included therein a statement of the amount of the premium or portion thereof required to be paid by the insured to renew the policy and the date by which such payment must be made, and the insured fails to discharge when due his obligation in connection with the payment of such premium or portion thereof . . .

(Italics ours.) *Cf. American Family Mut. Ins. Co. v. Ramsey*, ___ Ind. App. ___, 425 N.E.2d 243 (1981).

Safeco satisfied the statutory exception when it issued its

---

[5]RCW 48.18.292(1)(b) was amended by Laws of 1979, 1st Ex. Sess., ch. 199, § 7, which added, *inter alia*, the prefatory words, "At least 20 days prior to its expiration date".

"Statement of Coverage," offering to renew the policy and containing all the required information. *Nationwide Mut. Ins. Co. v. American Mut. Fire Ins. Co.,* 265 S.C. 399, 219 S.E.2d 79 (1975). When Irish failed to accept Safeco's offer by paying the renewal premium when due, the company notified Irish he would have until 12:01 a.m. February 17. It was thus extending a "grace" period during which time his coverage would continue, or more properly, be reinstated for the interim, *provided* the company received his renewal premium by the extended date. *Farmers Ins. Co. v. Hall, supra.* If he should fail to make the payment by the extended date, the lapse of his coverage on December 29, 1978, would not be rectified. *See generally* 44 C.J.S. *Insurance* § 286 (1945).

It is conceded Irish did not make his payment by the due date. In fact, the premium remains unpaid to this date. Accordingly, Safeco's policy did not cover the February 16 loss of the Alfa Romeo—unless there is some reason not to apply the general rule.

Irish contends that Safeco should be estopped from denying coverage. We do not consider this theory because it is raised for the first time on appeal. Irish did not plead estoppel as an affirmative defense as required by CR 8(c). Nor did he argue such a theory to the trial court. Instead he insisted that the cancellation provisions of his policy, when coupled with Safeco's "cancellation" date of February 17, gave him automatic coverage until that date. The policy language in question reads as follows: "The effective date of cancellation stated in the notice shall become the end of the policy period."

As we have explained, the term "cancellation" describes an insurer's unilateral termination of coverage *during the policy period, i.e.,* before the policy's normal expiration date. In such a case, the cancellation date, as per the policy language, "become[s] the end of the policy period," *i.e.,* a date *prior* to normal expiration. Here, the situation was one of nonrenewal, not cancellation. Accordingly, the policy language quoted does not serve in this instance to extend

unaccepted and nonrenewed coverage to February 17.

In conclusion, by the clear and unambiguous terms of the policy, Safeco offered Irish renewed coverage, provided he pay the renewal premium by a given date. This he did not do. The offer not being accepted, his policy terminated by its own terms at the end of the current policy term, December 29, 1978. He did not reinstate coverage for the interim by paying the premium by 12:01 a.m. February 17, 1979.

Judgment affirmed.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied June 26, 1984.

Review denied by Supreme Court September 21, 1984.