575 So.2d 207 (1990)
Alice M. REDDICK, Appellant,
v.
GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, etc., Appellee.
No. 90-502.
District Court of Appeal of Florida, First District.
November 16, 1990.
On Motion for Rehearing and Rehearing March 7, 1991.
*208 Reginald Luster, of Mathews, Osborne, McNatt & Cobb, Jacksonville, for appellant.
A. Graham Allen and Pamela S. Lynde, of Allen, Brinton & Simmons, P.A., Jacksonville, for appellee.
On Motion for Rehearing and Rehearing En Banc March 7, 1991.
ERVIN, Judge.
Alice Reddick, policyholder/beneficiary of a life insurance contract issued by appellee Globe Life, appeals a summary final judgment entered against her in an action in which she sought damages caused by the insurer's breach of the insurance contract. She argues that the lower court erred in concluding that no coverage was in effect as of the date of the insured's death for the stated reason that coverage had previously lapsed for nonpayment of premium. She contends that notwithstanding the fact that the thirty-one-day grace period had, under the terms of the policy, expired for failure to pay the required premium, Globe thereafter by letter extended the grace period beyond the date of the insured's loss. Alternatively, appellant argues that the terms of the letter are ambiguous and are susceptible to the interpretation that the policy had not lapsed, and that judgment should, as a matter of law, be entered for appellant, or that summary judgment in favor of appellee be reversed and the case remanded for trial by jury. We disagree on all points and affirm.
In November 1987, appellant applied for a life insurance policy insuring the life of her son Alexis D. Reddick in the amount of $12,000. The policy was issued effective December 1, 1987, and covered the period through December 1, 1988. Appellant was named the beneficiary under the policy, which contained the following pertinent provisions regarding payment of premiums:
GRACE PERIOD: A grace period of 31 days after the due date is allowed for payment of a Required Premium. During this time, the insurance provided by the policy continues. If the Insured dies during the grace period, we will deduct the unpaid premium from the proceeds. NONPAYMENT OF REQUIRED PREMIUMS: If a Required Premium is not paid by the end of the grace period, this policy will lapse as of the due date of the overdue premium. All insurance will terminate at the time as of the lapse if the policy has no cash value. If the policy has cash value, insurance will continue only as provided in the Options provision, and any insurance or benefits provided by riders will terminate.
The premium due December 1, 1988 was not paid; accordingly, after the expiration of the thirty-one-day grace period, the coverage, pursuant to the terms of the policy, automatically lapsed as of the due date. Subsequently, on January 5, 1989, Globe sent the following letter to appellant:
Dear Policyholder:
We're sorry, but at this time your Globe Life Insurance Policy is in danger of lapsing. Our records show that we have not received the premium that was due on December 1, 1988.
The reasons for starting this policy must certainly still be the same good reasons for keeping it. And the decision you make now about this past due payment will no doubt affect someone else ... someone you love.
PLEASE ACT NOW! Send in your payment, along with the attached notice, and the benefits of your policy will remain in full force. We must receive your payment by January 20, 1989.
The final notice which accompanied this letter stated, "PAYMENT IS NEEDED SO YOUR INSURANCE WILL NOT LAPSE."
Alexis D. Reddick died on January 17, 1989. On January 20, 1989, appellant contacted Globe, advising it of that fact. Globe denied coverage, contending that the policy had lapsed for nonpayment of the *209 requested premium. On January 20, appellant mailed the premium to Globe, which did not receive payment until after the 20th.
Appellant's argument that the grace period was extended through January 20, 1989, after the date of the loss, is based upon the language of the letter which advised that the policy was "in danger of lapsing," and stated "[s]end in your payment, along with the attached notice, and the benefits of your policy will remain in full force." It is appellant's contention that these statements constitute an extension of the grace period permitted by the policy and were therefore inconsistent with any theory that coverage had previously lapsed. We do not agree either that the letter extended the period of grace, which had expired before the letter was written, or that the letter was ambiguous and susceptible to an interpretation that the grace period was extended. The critical language which appellant places little emphasis on is that the extension was expressly conditioned upon receipt of the premium's payment by January 20, 1989. Because appellant failed to comply with this condition, the offer to extend insurance was never accepted. Accordingly, the policy expired pursuant to its provisions.
In reaching our conclusion, we consider that Globe's letter dated January 5, 1989, was only an offer to extend the time for paying the premium, rather than an extension of the grace period. Because different consequences apply to grace periods and to offers to extend the time for payment, we think it necessary to examine in some detail the distinguishing attributes of each.
Turning first to the characteristics peculiar to a grace period, the Court of Appeals of Kansas has summarized its purpose in the following terms:
Our examination of the authorities reveals that the sole purpose of a grace period is to prevent immediate lapse upon failure to pay a premium. Although the effect is to continue the policy in full force during the grace period, the clause does not change the due date of the premium, it merely provides a period within which the default may be cured without lapse of the policy. It is in essence a waiver of the default provision.
Bennett v. Colonial Life & Accident Ins. Co., 7 Kan.App.2d 441, 443, 643 P.2d 1133, 1136 (Ct.App. 1982). Because the default provision is waived during the grace period, the failure of the policyholder to pay the premium within such period is, according to the majority of the jurisdictions considering the question, immaterial insofar as such person's right to recover any loss which may have occurred during the period. See Gulf Guar. Life Ins. Co. v. Thompson, 363 So.2d 297 (Miss. 1978); Bensinger v. California Life Ins. Co., 459 S.W.2d 511 (Mo. Ct. App. 1970); Iowa State Travelers Mut. Ass'n v. Cadwell, 113 Ga. App. 128, 129, 147 S.E.2d 461, 463 (Ct.App. 1966) ("Where the liability attaches under the contract of insurance during the grace period, the fact that the premium is not paid or tendered until after the grace period expires is no defense to an action on the policy for a loss sustained while it was in full force."); 14 J. Appleman, Insurance Law and Practice § 7961, at 343 (1985).
On the other hand,
[a]n extension of time [to pay a premium] simply amounts to an agreement not to enforce a forfeiture if the premium is paid within the extended time; it postpones payment for that period, and does not constitute a waiver of forfeiture, or excuse payment, and if default is made at the expiration of the extension, the policy lapses where the agreement so provides.
6 G. Couch, Couch Cyclopedia on Insurance Law § 32:114, at 396 (rev. 2d ed. 1985) (footnotes omitted). See, e.g., State Farm Mut. Auto. Ins. Co. v. Robison, 11 Ariz. App. 41, 461 P.2d 520 (Ct.App. 1969) (provision in expiration notice from insurer that payment received within ten days after due date would reinstate policy as of policy's due date was not a grace period, but was an offer by the insurer which required acceptance within the ten-day period). Therefore, because an offer of an extension of time to pay a premium simply gives an insured or policyholder the right *210 to avoid forfeiture by paying the premium within the extended term, it necessarily follows that if the offer is not accepted due to such person's failure to pay the premium within the period specified, and a loss occurs while the extension is still open, the loss is not covered. 6 G. Couch, supra, § 32:136.
Unlike the general rule applicable to grace periods allowing coverage of losses occurring during such periods even if the premium is not paid, losses which happen while an offer is extended for paying an overdue premium are not automatically covered. This is so because the granting of an extension of time for the payment of overdue premiums is discretionary with the insurer; consequently, the insurer is free to impose such conditions precedent to the extension as it sees fit. Schick v. Equitable Life Assurance Soc'y of United States, 15 Cal. App.2d 28, 33, 59 P.2d 163, 166 (Ct.App. 1936); 14 J. Appleman, Insurance Law and Practice § 7962 (1985). If an insurer chooses to impose a condition precedent to the extension it offers, a policyholder's failure to comply strictly with the terms of the offer can be deemed a failure by such person to accept the offer. See Servoss v. Western Mut. Aid Soc'y, 67 Iowa 86, 24 N.W. 604 (1885) (a company's offer to a defaulting policyholder to restore his policy if he sent the annual dues at once is not a continuing offer; therefore, sending in his dues twenty-three days after receipt of the offer did not comply with the offer); McClure v. State Farm Mut. Auto. Ins. Co., 113 Ga. App. 467, 148 S.E.2d 475 (Ct.App. 1966) (insured's failure to buy and pay for insurance protection within ten days following the due date, as offered by the insurance company, placed no obligation on the company to pay the loss); Sawyer v. North Carolina Farm Bureau Mut. Ins. Co., 71 N.C. App. 803, 323 S.E.2d 450 (Ct.App. 1984) (an insured's failure to pay the insurer the premium within the seventeen-day period extended gave the insurer the right not to renew the policy retroactively to the date of its expiration).
The above rule is well exemplified by a decision of the Second District Court of Appeal in State Farm Mut. Auto. Ins. Co. v. Green, 500 So.2d 563 (Fla. 2d DCA 1986), review denied, 508 So.2d 14 (Fla. 1987), in which an insured brought a suit for declaratory judgment to establish coverage for an accident occurring after the expiration date of the policy but within the twenty-two-day period extended by the insurer to the insured in an expiration notice, which the court considered to be an "offer to contract." The court held that because the insured did not strictly comply with the terms of the insurer's offer, due to her failure to pay the overdue premium within the twenty-two-day period, the offer was not accepted, and there could be no coverage for any loss which occurred during such time. This was so despite the fact that the twenty-second day fell on Sunday, and the premium payment was tendered the following Monday.
To conclude: The letter of January 5 was an additional extension, over and above the already expired grace period, which allowed the policyholder an avenue to avoid the automatic forfeiture of the policy caused by nonpayment of the premium. The letter and accompanying notice, in our judgment, clearly placed the policyholder on notice that no insurance would be available if payment was not received by January 20, and that the addressee bore the risk of nonpayment. The policy moreover did not contemplate free insurance even during the grace period, as is reflected in the provision of the policy stating that if death occurred during the grace period, any unpaid premium would be deducted from the proceeds payable to the beneficiary under the policy.
Nor do we consider that the policyholder's placement of the overdue premium in the mail on January 20th  the final date to which the offer of extended protection pertained  strictly complied with the insurer's condition that payment must be received by it on such date. In its summary final judgment, the lower court correctly stated that the deposit acceptance rule[1] is *211 inapplicable if the offerer has expressly conditioned the offer upon actual receipt of the acceptance. See generally Maloney v. Atlantique Condominium Complex, Inc., 399 So.2d 1111, 1113 (Fla. 5th DCA 1981).
The lower court's ruling that actual receipt of payment by the insurer was required is supported by an opinion of the Washington Court of Appeals in Safeco Ins. Co. v. Irish, 37 Wash. App. 554, 681 P.2d 1294 (Ct.App. 1984). There, after the insured had failed to pay his automobile liability insurance premium by the due date, the company notified him that he would have until 12:01 a.m. on February 17, 1979 to make payment, thereby extending the period of time that his coverage would continue, provided that the company receive the renewal premium by the extended date. Because the premium was not paid within the extended time, the court ruled that the lapse of coverage, which occurred on December 29, 1978, could not be rectified.
In so holding, the court rejected the insured's argument urging that although he never made the premium payment at issue, he intended to mail the premium the evening of February 16, and, while he was proceeding to do so, discovered that his car had been stolen and subsequently wrecked by a thief during a high-speed chase with the police. In an important footnote to the opinion, the court observed that even if the insured had posted the payment in the mail on February 16, such action would not have complied with the insurer's condition that actual receipt by it of the payment was essential: "A deposit in the mails would not have been sufficient; the policy provision requiring receipt of the premium controls, unless changed by the course of dealing between the parties. There was no evidence of such a course of dealing." Id., 37 Wash. App. at 557 n. 3, 681 P.2d at 1296 n. 3 (citation omitted).
AFFIRMED.
NIMMONS, J., concurs.
ALLEN, J., dissents with written opinion.
ALLEN, Judge, dissenting.
Where an insurer offers to extend a policy of insurance beyond the lapse or expiration date provided in a policy, the insurer is, as the majority indicates, free to impose such terms as the insurer sees fit. This is so because extension of the policy is completely within the discretion of the insurer. Consequently, conditions precedent to extension, which might include payment of a premium or submission of certain documents by a stated date, may be prescribed by the insurer.
Another term which the insurer's offer may prescribe is whether the policy will be in effect during the period of time allowed by the insurer for satisfaction of specified conditions precedent. This can be a very important term, because it specifies whether the insurable risk will be borne by the insurer or by the policyholder during the time allowed for the policyholder to determine his or her course in response to the insurer's offer. The cases reveal that insurers have taken various approaches in dealing with this term. Some offers have provided that satisfaction of the condition or conditions precedent would reinstate the policy as of the date of the performance of the conditions precedent. Others have indicated that satisfaction of conditions precedent would reinstate the policies as of the date of the original policy lapse, so as to retroactively provide continuous coverage during the interim. Still other offers have suggested that coverage would be extended to the date allowed for performance of conditions precedent, without tieing interim coverage to satisfaction of prescribed conditions precedent. Finally, some offers have simply been silent as to the term.
Where policyholders have failed to perform prescribed conditions precedent, insurers who have made interim coverage expressly contingent upon timely satisfaction *212 of conditions precedent have prevailed as to claims for interim losses. In Safeco Ins. Co. of America v. Oehmig, 305 So.2d 52 (Fla. 1st DCA 1974), the automobile policy renewal premium due date and policy lapse date was July 28, 1972. Having failed to receive the premium, on August 1, 1972, the insurer sent the policyholder a "Notice of Expiration" in which the policyholder was allowed an additional 20 days from July 28, 1972, within which to pay the renewal premium. The notice contained the following statement:
"IMPORTANT! Payment must be postmarked within 20 days after due date to keep your policy in force. Otherwise coverage stops at due date."
Id. at 53 (emphasis added). When the policyholder failed to pay the premium by August 17, 1972, this court held that, in accordance with the clear language of the offer, which had made performance of the condition precedent necessary to interim coverage, the policy had lapsed on July 28, 1972, and an August 1, 1972 loss was not covered.
A case to like effect is State Farm Mut. Auto. Ins. Co. v. Green, 500 So.2d 563 (Fla. 2d DCA 1986), review denied, 508 So.2d 14 (Fla. 1987). There, State Farm sent Green an expiration and renewal notice in the latter part of January, 1985, advising Green that her automobile insurance had expired on January 12, 1985, but allowing her to renew the policy without a lapse in coverage upon payment of a premium by February 3, 1985. Because the notice "provided that there would be no coverage for accidents occurring between the date of expiration and the date and time the insured's coverage would again become effective," id. at 564, the court held that failure to pay the premium by February 3, 1985, precluded coverage for an accident which occurred on February 1, 1985.
Nevertheless, where insurers have failed to make interim coverage clearly contingent upon performance of conditions precedent, interim losses have been held to be covered, regardless of whether the conditions precedent were timely satisfied. 14 J. Appleman, Insurance Law and Practice § 7962, at 354-355 (1985). Cases so holding are in accord with the general principle that forfeitures of insurance policies are not favored, and that any course of action by an insurer which leads a policyholder to believe that additional time has been granted for the payment of a premium and that in the meantime forfeiture of his policy will not be incurred, is a waiver of contrary provisions in the contract, and the insurer will be estopped to raise them. Travelers Protective Ass'n of America v. Jones, 91 F.2d 377 (5th Cir.1937). See also Supreme Lodge Knights of Pythias of the World v. Kalinski, 163 U.S. 289, 16 S.Ct. 1047, 41 L.Ed. 163 (1896). Such cases were also doubtless decided upon the realization that persons of reasonable understanding are justified, in the absence of express notification to the contrary, in relying upon the granting of additional time for payment as being an extension of coverage during the period allowed for late payment. Security Life & Trust Co. v. Jones, 202 So.2d 906, 909 (Fla. 2d DCA 1967), cert. denied, 209 So.2d 672 (Fla. 1968).
In Travelers Protective, supra, a federal case involving a Florida insured, Jones was a member of the appellant fraternal benefit association which had issued him an accidental death policy in the amount of $5,000. Jones was required to timely pay semiannual dues and any special assessments levied by the association board in order to keep the insurance in force. In April of 1933, a special assessment of $2 was levied. The notice mailed to Jones advised him that the special assessment had to be paid by May 15, 1933, or benefits under the policy would cease. When Jones had not paid the assessment by early June, he was mailed another notice which advised him that payment of the June semiannual dues, together with the past due $2 special assessment would "put [him] ... in good standing to December 31, 1933." Travelers Protective, 91 F.2d at 378. The second notice made no mention of whether Jones would be covered from May 15, 1933, until payment of his dues and special assessment. Jones died on June 17, 1933, as a result of injuries suffered in an automobile accident. The court held that the second notice had,

*213 clearly indicated to Jones that the insurance was kept in force by the grace of the association and he had only to pay [the dues and special assessment] . .. by June 30th, which date had not arrived when he was injured. This naturally lulled him into a sense of security.
Id.
In Security Life, supra, the insured gave the insurer a check for $288.80 to reinstate two life insurance policies which had lapsed. When the check bounced, the insurer wrote to the insured giving him ten days to cover the check and urging him to do so "to insure [his] ... continued protection." The insured died five days later. In upholding the jury verdict finding the death to be covered, the court said:
Moreover, appellant wrote Mr. Jones giving him ten days to cover his check, which it intended to redeposit. Appellant did not indicate that another reinstatement would be necessary. Reasonable men would be justified in concluding that appellant intended to carry the policies in force for at least the ten-day period, during which the insured could have arranged for payment of the $288.80. Since he died within that period, the policy was in force at his death. (citations omitted). The trial court did not err in submitting this issue to the jury.
Security Life, 202 So.2d at 909.
Under an almost identical set of facts, in Prudential Ins. Co. of America v. Seabrook, 366 So.2d 482 (Fla. 1st DCA 1979), we also upheld a final judgment in favor of a beneficiary under a life insurance policy. On August 1, 1974, the policy lapsed upon its terms for nonpayment of premiums. Thereafter, the insurer and its agent contacted the policyholder regarding reinstatement of the policy. On August 27, 1974, the policyholder signed a reinstatement form and delivered a check for reinstatement to the insurer's agent. The reinstatement form receipt provided: "This receipt is issued on the further condition that any check ... be good and collectible." Id. at 483. The check bounced. Then on September 26 or 27, 1974, the policyholder agreed with the insurer's agent that the policyholder would give the agent sufficient cash to cover the check on September 30, 1974. Apparently, no mention was made of whether the insured would be covered in the interim. On September 28, 1974, the insured accidentally drowned, and the reinstatement fee was not paid by September 30, 1974. Although an internal memorandum of the insurer indicating that the policy would lapse on October 1, 1974, "according to usual normal lapse rules," id., was considered significant, an equally important rationale for the holding was that by allowing the policyholder until September 30, 1974, to make the payment, the insurer had impliedly extended credit to the policyholder and thereby subjected itself to liability for claims arising through September 30, 1974, regardless of whether the condition precedent, payment of the amount due, was satisfied by that date.
Turning now to the case before us, it appears to me that the dispositive issue is whether the letter forwarded to the appellant on January 5, 1989, apprised the appellant that payment of the premium by January 20, 1989, was a condition precedent to policy coverage beyond the lapse date provided in the policy. If the letter clearly did so advise the appellant, then the trial court was correct in granting summary final judgment for the insurer. On the other hand, if the letter did not convey this information to the appellant policyholder, or if the letter was ambiguous as to whether interim coverage was so conditioned, entry of summary final judgment for the insurer was error.
I find the letter to be ambiguous as to whether interim coverage was conditioned upon payment of the premium by January 20, 1989. The letter simply made no direct statement which resolved the question. While the letter did clearly indicate that receipt of payment by January 20 was necessary, it did not indicate what effect failure to make payment by that date would have upon a claim arising prior to January 20. Further, although the policy grace period had already expired on January 5, 1989, the letter merely indicated that the policy was "in danger of lapsing," and the letter made no reference to any necessity *214 for reinstatement of the policy. Additionally, the letter said the policy would "remain in full force," rather than that payment would cause coverage to be retroactively reinstated for the interim period (emphasis added). This is clearly unlike the notices in Oehmig and Green, supra, which unmistakably advised the policyholders that satisfaction of the specified conditions precedent were prerequisites to interim coverage. The insurer's communication here appears to me to be much more like the communications in Travelers Protective, Security Life, and Seabrook, where the policyholders were simply given additional time to pay past due premiums without interim coverage being made contingent upon payment. In such circumstances, those cases hold that a policyholder may be found to have reasonably believed that coverage would be afforded through the extended payment date.
Because I believe the letter was ambiguous as to whether coverage would be provided during the time allowed for the appellant to make late payment of the premium, and because I believe a trier of fact might well determine that the appellant reasonably understood the letter to mean that coverage would be provided through January 20, 1990, regardless of whether payment of the premium was actually made in a timely fashion, I would reverse the summary final judgment in favor of the appellee and remand this cause to the trial court for trial of the issues presented.

ON MOTION FOR REHEARING AND REHEARING EN BANC
ERVIN, Judge.
We deny rehearing, but, in light of the discussion in the dissenting opinion, and because we recognize that this case presents an issue which recurs frequently, we certify the following question to the Supreme Court of Florida as a question of great public importance:
Must a life insurance company's offer to extend the time to pay an overdue premium to a date beyond the end of the policy grace period, thereby providing coverage, subject to the conditions specified in the offer, for any loss which occurs during such extended period, include an express notification to the insured or the policyholder that the insurance coverage has already terminated and the insurance policy will not be reinstated unless payment is made on or before the end of the extended period?
NIMMONS, J., concurs.
ALLEN, J., concurring in part and dissenting in part with written opinion.
ALLEN, Judge, concurring in part and dissenting in part.
For the reasons expressed in my dissenting opinion, I would grant rehearing. However, I concur with the majority in certifying a question to the supreme court.
NOTES
[1] The deposit acceptance rule provides that an acceptance of an offer is deemed effective as of the date of its deposit in the mail. See Brake v. State of Fla., Unemployment Appeals Comm'n, 473 So.2d 774 (Fla. 3d DCA 1985).