596 So.2d 435 (1992)
Alice M. REDDICK, Petitioner,
v.
GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, etc., Respondent.
No. 77603.
Supreme Court of Florida.
February 27, 1992.
Rehearing Denied May 4, 1992.
*436 Reginald Luster of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, for petitioner.
A. Graham Allen and Edward McCarthy, III of Allen, Brinton & Simmons, P.A., Jacksonville, for respondent.
GRIMES, Justice.
We review Reddick v. Globe Life & Accident Insurance Co., 575 So.2d 207 (Fla. 1st DCA 1990), in which the court certified the following as a question of great public importance:
Must a life insurance company's offer to extend the time to pay an overdue premium to a date beyond the end of the policy grace period, thereby providing coverage, subject to the conditions specified in the offer, for any loss which occurs during such extended period, include an express notification to the insured or the policyholder that the insurance coverage has already terminated and the insurance policy will not be reinstated unless payment is made on or before the end of the extended period?
Id. at 214. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
On December 1, 1987, Globe issued a life insurance policy in the amount of $12,000 to Alice M. Reddick, as beneficiary, which covered the life of her son, Alexis D. Reddick. Globe's policy contained the following provisions:
GRACE PERIOD: A grace period of 31 days after the due date is allowed for payment of a Required Premium. During this time, the insurance provided by the policy continues. If the Insured dies during the grace period, we will deduct the unpaid premium from the proceeds.
NONPAYMENT OF REQUIRED PREMIUMS: If a Required Premium is not paid by the end of the grace period, this policy will lapse as of the due date of the overdue premium. All insurance will terminate at the time of lapse if the policy has no cash value. If the policy has cash value, insurance will continue only as provided in the Options provision, and any insurance or benefits provided by riders will terminate.
The annual premium due on December 1, 1988, was not paid. On January 5, 1989, Globe sent the following letter to Reddick.
Dear Policyholder:
We're sorry, but at this time your Globe Life Insurance Policy is in danger of lapsing. Our records show that we have not received the premium that was due on December 1, 1988.
The reasons for starting this policy must certainly still be the same good reasons for keeping it. And the decision you make now about this past due payment will no doubt affect someone else ... someone you love.
PLEASE ACT NOW! Send in your payment, along with the attached notice, and the benefits of your policy will remain in full force. We must receive your payment by January 20, 1989.
The final notice which accompanied this letter stated: "PAYMENT IS NEEDED SO YOUR INSURANCE WILL NOT LAPSE." Alexis Reddick died on January 17, 1989. His mother advised Globe of her son's death on January 20. Globe denied coverage on the premise that the policy had lapsed for nonpayment of the premium. Ms. Reddick mailed the premium on January *437 20, 1989, but it was not received until after that date.
When Globe continued to deny coverage, Ms. Reddick filed suit to recover under the policy. Both parties moved for summary judgment. The trial court denied Ms. Reddick's motion and entered a summary judgment for Globe. In a split decision, the First District Court of Appeal affirmed the judgment. The majority opinion reasoned that because the policy had already lapsed, Globe's letter of January 5, 1989, constituted an offer to reinstate the policy upon the condition that the premium payment was received by January 20, 1989. Because the payment was not received by that date, the offer was not accepted, and there was no coverage for the death which occurred during the interim period.
Ms. Reddick argues that the letter did not clearly and unambiguously state whether interim coverage was conditioned upon payment of the premium on or before the end of the extended period. Thus, relying upon the general principle that ambiguities in an insurance contract will be construed against the insurer, she asserts that her son was still covered because the death occurred within the interim period.
At the outset, there are several matters which are undisputed. If Alexis Reddick had died during the grace period before the premium was paid, there would have been coverage under the express provisions of the policy. Further, Globe conceded at oral argument that coverage would have existed if payment had been received by January 20, 1989, even after Alexis' death on January 17, 1989. On the other hand, if the premiums were not received by January 20, 1989, there would be no coverage if Alexis had not died until January 21, 1989. Therefore, the sole issue is whether coverage existed when Alexis died before January 20, 1989, and the payment was not received by that date.
The granting of an extension of time for premium payments is entirely discretionary with the insurer, and the insurer may impose such conditions as it sees fit. 14 John A. Appleman, Insurance Law and Practice § 7962 (1985). However, any course of conduct by an insurance company which leads the insured to believe that an extension has been granted for the payment of a premium and that in the meantime the policy will not be forfeited is a waiver of contrary provisions in the contract and the insurer is estopped to urge them. Travelers Protective Ass'n of Am. v. Jones, 91 F.2d 377 (5th Cir.1937).
By its terms, Globe's policy had already lapsed when it wrote to Ms. Reddick on January 5, 1989. Yet, the first paragraph of the letter states that the policy "is in danger of lapsing." The third paragraph points out that if payment is made "your policy will remain in full force." This was reinforced by the final notice stating that "PAYMENT IS NEEDED SO YOUR INSURANCE WILL NOT LAPSE." The letter clearly indicated that the policy was still in effect. Thus, it could easily be understood to mean that while payment must be received by January 20 if the insurance is to continue, coverage exists during the interim should a loss occur before that date. The ambiguity lies not in whether Globe was offering to extend coverage conditioned upon receipt of the overdue premium by January 20, but whether there was interim coverage in the event a loss occurred before that date even though the premium was not received. In other words, the letter did not indicate what effect the failure to make a payment by January 20 would have upon a claim arising prior to that date. Because ambiguities must be construed against the insurer, we hold that coverage existed when Alexis Reddick died before the time specified for the payment of the premium.
By our holding we do not intend to place an undue burden upon insurers. We only ask that their letters concerning policy renewals for overdue premiums clearly state what they mean. Thus, in Safeco Insurance Co. of America v. Oehmig, 305 So.2d 52 (Fla. 1st DCA 1974), the insurance policy had expired on July 28, 1972. On August 2, 1972, the company sent a notice of expiration in which the insured was permitted an additional twenty days in which to pay the premium. The notice contained the following *438 statement: "IMPORTANT! Payment must be postmarked within 20 days after due date to keep your policy in force. Otherwise coverage stops at due date." Id. at 53. The premium was not paid until after the twenty days had run from July 28, 1972. The court held that because the premium was not timely paid there was no coverage for a loss which occurred on August 1, 1972. This decision was correct because the notice stated that coverage stopped on the due date if the payment was not postmarked within twenty days thereafter.
The court in State Farm Mutual Automobile Insurance Co. v. Green, 500 So.2d 563 (Fla. 2d DCA 1986), review denied, 508 So.2d 14 (Fla. 1987), reached a similar conclusion. In that case, the insurance policy had expired on January 12, 1985. However, the insured had received a "last notice" providing that if the premium were paid by February 3, 1985, the company would inform the insured whether the payment was accepted and if so when coverage would begin. The notice also provided that there would be no coverage for accidents occurring between the time of the expiration and the date and time the insurance would again become effective. The premium payment was not tendered until February 4, 1985. The court properly held that because the language in the renewal notice was clear, an accident which occurred on February 1, 1985, was not covered under the policy.[1]
We have decided not to answer the certified question as worded because we do not think it would be appropriate to impose a rule requiring insurance companies to give any particular form of notification. Cases such as this necessarily must be decided on their particular facts. In this case, Globe's letter was ambiguous with respect to whether the policy would remain in effect until January 20, 1989, and as a consequence, Alexis' death prior to that date was within the coverage. Obviously, Globe may deduct the appropriate premium from the proceeds of the policy.
We quash the decision below and remand for entry of a judgment in favor of Ms. Reddick.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, KOGAN and HARDING, JJ., concur.
NOTES
[1] We acknowledge that our holding is directly contrary to Safeco Insurance Co. v. Irish, 37 Wash. App. 554, 681 P.2d 1294, review denied, 102 Wash.2d 1013 (1984), cited by the majority opinion below in another context. In that case the policy had already lapsed for nonpayment of premiums. The carrier sent the insured a notice that his policy would be cancelled if the premium was not paid by February 17, 1979, but that if the premium was paid his insurance would "continue in force." Because the premium was not paid by February 17, the court held that a loss which occurred the day before was not covered. We note, however, that in analyzing this opinion Appleman states: "Insurer having elected to extend coverage until February 17 should have been bound by that election." 14 John A. Appleman, Insurance Law and Practice § 7962, at 355 n. 28 (1985).