105 F.3d 664
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Antonietta CHAMBERS, etc., et al., Plaintiffs-Appellants,
v.
WESTERN GEOPHYSICAL COMPANY OF AMERICA, and its predecessor
Western Atlas International, Inc., a foreign corporation,
and
Connecticut General Life Insurance Company Defendants-Appellees.
 No. 95-35664.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 9, 1996.[1]
Decided Jan. 3, 1997.
 
 1
 Before: BEEZER and O'SCANNLAIN, Circuit Judges, and BROWNING, District Judge.[2]
 
 MEMORANDUM[3]
 
 2
 This is a diversity action between Appellants, residents of the state of Washington, and Appellants' decedent's employer, a Texas corporation, and the employer's insurance company, which has its principal place of business in Connecticut. Appellants sued in Washington state court to recover on a life insurance policy held by their son and brother. Appellees, the decedent's employer and its insurer, deny the policy was in effect on the date of the insured's death. Appellees removed the case to federal court. The district court granted summary judgment for the employer and the insurance company and Appellants brought this timely appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Appellants argue that decedent was either still employed by Western General or that, from the end of February, 1988, he was simply on a leave of absence. Appellees argue that decedent had voluntarily resigned on February 26, 1988. Appellants argue that decedent's precise status raises a fact question which precludes summary judgment. If decedent were still on active duty, Appellants argue that the policy would have been in effect on the date of his death. Appellants also argue that, were he on temporary leave or a leave of absence, decedent's policy would have been effective for sixty days after his "active service" had ended. The relevant parts of the policy read as follows:
 
 TERMINATION OF INSURANCE--EMPLOYEE
 
 4
 Your insurance will cease on the earliest date below:
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 --the date your Active Service ends except as described below.
 
 
 8
 * * *
 
 
 9
 * * *
 
 Temporary Layoff or Leave of Absence
 
 10
 If your Active Service ends due to temporary layoff or leave of absence, your insurance will be continued until the date your Employer: (a) stops paying premium for you; or (b) otherwise cancels your insurance. However, your insurance will not be continued for more than 60 days past the date your Active Service ends.
 
 
 11
 The insurance certificate itself defeats Appellants' argument that decedent would have been covered had he been simply laid off or on a leave of absence at the time of his death. There is no dispute that the last premium paid by the employer was on February 1, 1988, which means that his coverage was paid through the month of February. The certificate clearly states that the insurance is discontinued when the employer stops paying premium, i.e., at the end of February, 1988. Appellants argue that the last sentence ("your insurance will not be continued for more than 60 days past the date your Active Service ends") can be read to say that the insurance does continue for sixty days past Active Service. The plain meaning of the sentence, however, is that even if the insurance continues past the end of Active Service (for example, if the employer continues to pay, or if the employer does not cancel the insurance), insurance coverage will not continue for more than sixty days past the end of Active Service.
 
 
 12
 Even if the "Temporary Layoff" paragraph could be read to say decedent's coverage would not end until sixty days past the end of Active Service, Appellants have not offered adequate evidence to raise a fact issue regarding decedent's employment status. In support of their contention that the decedent voluntarily resigned (and thus discontinued Active Service), Appellees offer the following evidence: a "Separation From Payroll Report" generated by decedent's supervisor which indicates that decedent voluntarily resigned on February 28, 1996;[4] an affidavit from Western Geophysical's custodian of records to the effect that this type of Report establishes the last day worked by decedent; a computerized record of the list of individuals to whom "Cobra" letters were sent which included decedent's name; and an affidavit to the effect that an individual's appearance on the computerized list means that the individual had indeed resigned from employment.
 
 
 13
 To contradict this evidence, Appellants offer three statements by witnesses that Appellants contend create a fact issue as to whether decedent was either in Active Service or on a leave of absence. The statements are made by family and friends of decedent and are to the effect that decedent was planning on shipping out with Western Geophysical at some time in 1988. These declarations are insufficient to create a fact question as to decedent's employment status at the time of his death for a number of reasons. First, they fail to indicate when the declarants' observations were made, beyond an imprecise reference to "early 1988"; thus, the observations could have been made before February 28, 1988, and do not preclude decedent's changing his mind at that time. Second, the declarations conclude that decedent "fully expected" to ship out without establishing any facts to support their observations. Third, even if decedent had been fully expecting to ship out, this fact does not preclude the possibility that he had resigned with the intention of being rehired in the future.[5] Fourth, decedent's mother's statement that decedent "did not voluntarily resign" is inadmissible. The mother offers no evidence of how she might have known that decedent did not resign; any evidence she could offer would have to be a statement from decedent, and thus inadmissible hearsay. Appellants have failed to proffer admissible evidence that raises a question of material fact which would preclude summary judgment.
 
 II
 
 14
 Appellants also contend that there is a material fact issue as to whether CGLIC complied with statutory requirements to give notice of cancellation of the decedent's insurance policy. As evidence that decedent never received such notice, Appellants offer a declaration by decedent's mother that her address was the address used by decedent at the time in question, and that no such letter was ever received at that address.
 
 
 15
 However, the notice requirements of Wash.Rev.Code § 48.18.290 do not apply to the termination of decedent's coverage, because the requirements apply only in the case of "[c]ancellation by the insurer," Wash.Rev.Code § 48.18.290(1); a termination due to failure to pay a premium as a condition of renewal does not constitute a cancellation. See Safeco Ins. Co. v. Irish, 37 Wash.App. 554, 558, 681 P.2d 1294, 1296 (1984) ("The term 'cancellation' refers to a unilateral act of the insurer terminating coverage during the policy term."). Beyond unsupported statements that the policy was cancelled, Appellants offer no evidence to suggest that CGLIC cancelled the group policy. Indeed, the parties agree that the last payment made on decedent's behalf was made on February 1, 1988, and that therefore the policy was only paid through February 29, 1988. The policy terminated due to nonpayment of premiums and not to any cancellation by the insurer.
 
 
 16
 The district court also held that the notice requirements of Wash.Rev.Code § 48.18.290 did not apply to decedent's policy because the scope of § 48.18 "shall not apply to life or disability policies not issued for delivery in this state nor delivered in this state." Wash.Rev.Code § 48.18.010. Appellants argue that, despite the fact that the group policy holder (Western Geophysical) is a Texas Corporation, the policy was delivered in Washington for the purposes of § 48.18.290 because decedent was located in and was a resident of Washington while he was insured. Further, Appellants cite Wash.Rev.Code § 48.01.020, which states: "All insurance and insurance transactions ... affecting subjects located within this state ... are governed by this code." CGLIC does not dispute that decedent was in Washington while he was insured, but argues that this fact does not prove that the policy was delivered in Washington; further, CGLIC argues that the "insured" was not decedent, but only the holder of the group policy, Western Geophysical.
 
 
 17
 No Washington cases have interpreted the meaning of "delivered" in the context of § 48.18.010. However, in light of the fact that § 48.18.010 does not apply when the policy is terminated because the premium has not been paid, as is the case here, we need not reach the "delivered" issue. Nor do we need to reach the issue of whether decedent's policy is exempt from the notice requirements in § 48.18.290 because of the provision in § 48.18.290(5) which states that the requirements do not apply to contracts "without provision for cancellation prior to the date to which premiums have been paid."
 
 III
 
 18
 Citing case law which holds that undefined insurance terms are to be interpreted as they would be construed by the average person, Appellants finally argue that the average person would have believed decedent's coverage to extend sixty days past the termination of decedent's employment. Appellants contend that two phrases in various documents support their contention.
 
 
 19
 First, Appellants rely on the phrase from the Certificate of Insurance which reads: "However, your insurance will not be continued for more than sixty days past the date your active service ends." As already discussed, this phrase cannot be read to state that insurance coverage will extend sixty days past active service. Apart from the fact that the phrase is part of the section relating to Temporary Layoff or Leave of Absence, which is clearly not applicable to decedent because of his resignation, the phrase is preceded by the statement that insurance will only be continued until the "Employer (a) stops paying premium for you." Further, the certificate contains an even more clear statement in the preceding section that the insurance ceases on "the date your Active Service ends except as described" in the Temporary Layoff or Leave of Absence section. Because decedent clearly resigned from Active Service, it should be clear to the average reader that the insurance coverage ended when decedent's Active Service ended.
 
 
 20
 Second, Appellants contend that the Cobra letter sent out by Western Geophysical contained ambiguous language which would lead the average person to believe that he was covered for sixty days past termination of employment. Specifically, Appellants point to the sentence "If you wish to continue coverage please fill out the Enrollment form enclosed and return it within 60 days...." Appellants argument must fail, however, because the Cobra letter clearly indicates that the coverage offered therein is limited to medical and dental insurance. The only suggestion in any of the documents that coverage might extend beyond the last day of Active Service lies in the following paragraph describing employee benefits: "Basic Life Insurance coverage ceases upon last day worked. If your death should occur within 31 days of termination of coverage, however, the basic life benefit you were entitled to is paid to your designated beneficiary." Under this paragraph, decedent would have received the benefits if he had died 31 days after coverage terminated. Because the last payment was made on February 1, 1988, coverage terminated at the end of that month. If decedent's death had occurred within 31 days of the end of February, 1988, that is, by the end of March, 1988, the benefits would have been paid. However, decedent died on April 13, 1988, two weeks later, missing the 31-day extension by a mere two weeks. Nonetheless, however slim the margin, it is clear that the coverage did not extend to the time of decedent's death.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 [2]
 The Honorable William D. Browning, United States District Judge for the District of Arizona, sitting by designation
 
 
 [3]
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [4]
 Appellants correctly note that the Report is not signed by decedent, that it does not give decedent's address or any explanation behind the resignation, and that the resignation is indicated simply by an "X" placed in a box next to the words "Voluntary Resignation." Certainly this form might be suspect if this were the only evidence that Appellees proffered to indicate decedent's resignation. However, Appellees proffer a significant amount of substantiating evidence in addition to the Report. Moreover, Appellants proffer no admissible evidence to contradict the Voluntary Resignation
 
 
 [5]
 Decedent's family also made statements that decedent had told them that "if something were to happen to him, that he would have taken care of me by an insurance policy." Not only are these statements inadmissible hearsay, the statements themselves do not indicate the source of the insurance, nor do the declarants indicate when the statements were made. It is entirely possible that the statements were made while decedent was still employed with Western Geophysical