DeBose et al., Appellants, *v.* The Travelers Insurance Companies et al., Appellees; Crestmont Cadillac Corporation, Appellant.

[Cite as DeBose *v.* Travelers Ins. Co. (1983), 6 Ohio St. 3d 65.]

(No. 82-906—Decided July 27, 1983.)

*Messrs. Rippner, Schwartz & Carlin* and *Mr. Carey N. Gordon,* for appellants DeBose *et al.*

*Ms. Kathleen E. Zink,* for appellees.

*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis* and *Mr. Bruce P. Mandel,* for appellant Crestmont Cadillac Corp.

LOCHER, J. Appellants and Crestmont first request that we find that, by failing to send them the appropriate notice of cancellation, appellees were estopped from terminating the former's insurance coverage. In the alternative, this court is asked to reach the same result by determining that appellees waived their right to cancel the policy by accepting appellants' premium payment for the initial term of the policy after being apprised of the theft of the insured automobile. Finding appellants' and Crestmont's first argument meritorious, we reverse the appellate court's judgment on that basis.[1]

As none of the parties to the instant appeal disputes the fact that no proper notice of the cancellation of the policy was sent to appellants,[2] the sole inquiry we need undertake is whether appellees were required in this instance to tender such notice. A review of the pertinent statutes reveals that appellees were legally compelled to do so. R.C. 3937.31 provides, in relevant part:

"(A) Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, 'cancellation,' as used in sections 3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included in-

---

[1] In ruling that appellees failed to send the statutorily mandated notice of cancellation to any of the insureds, we find *ipso facto* that Crestmont has stated a valid claim.

[2] As the court of appeals stated in its opinion, the trial court did not err in its apparent finding that appellees presented no evidence sufficiently probative of their assertion that notice of cancellation had been mailed to appellants. Indeed, the appellate court further found that even had such notice been tendered it did not comport with the statutory criteria enumerated in R.C. 3937.32.

sureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code, and for one or more of the following reasons:

"* * *

"(3) Nonpayment of premium, which means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premiums, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit."

The policy at issue in the case at bar is clearly of the genre contemplated by the statute. At the time of the proposed termination, appellants' policy had only been in effect six months and was, thus, within the two-year period set forth in R.C. 3937.31 (A) during which renewal is mandatory. Moreover, as R.C. 3937.31 (A) designates as a "cancellation" any refusal to renew a policy with all of its initial coverages and limits, appellees' absolute refusal to renew any provisions of the subject policy must also be so denoted. Finally, the statute expressly provides that the termination of a policy, as in the case at bar, within the mandatory renewal period and for nonpayment of premiums is a cancellation which may only be properly effected through compliance with, *inter alia,* the notice requirement of R.C. 3937.30 *et seq.*

Although distinctions between lapses and cancellations may be germane to common-law analyses of insurance policy terminations, the General Assembly, as stated earlier, has statutorily defined "cancellation" to include such lapses as occur when an insurer refuses to renew a policy. We are thus constrained to attribute that meaning to cancellation, at least in the context of R.C. 3937.30 *et seq.,* which the General Assembly has so ascribed. As this court stated in paragraph two of the syllabus in *Woman's Bowling Congress* v. *Porterfield* (1971), 25 Ohio St. 2d 271 [54 O.O.2d 383]: "Where a statute defines terms used therein which are applicable to the subject matter by the legislation, such definition controls in the application of the statute. * * *" (Citation omitted.) See, also, *Ohio Civil Rights Comm.* v. *Parklawn Manor* (1975), 41 Ohio St. 2d 47, 50 [70 O.O.2d 148]; *Terteling Bros.* v. *Glander* (1949), 151 Ohio St. 236 [39 O.O. 60], paragraph one of the syllabus.

It is beyond reasonable dispute that R.C. 3937.30 *et seq.* are primarily designed to protect the public from the dangers which uninsured motorists pose. R.C. 3937.31 (A) attempts to ameliorate this threat by mandating that insureds whose policies have been in effect for less that two years receive notice of any planned cancellation of their policies in time for them to secure new coverage. Appellees' interpretation of the subject Code provisions would frustrate, rather than further, the statute's laudatory objective.

Based on the foregoing analysis, we find that appellees' failure to tender the requisite notice of cancellation prevented the subject insurance policy from expiring, thus preserving appellees' obligation to indemnify both appellants and Crestmont in case of loss. Appellants' own failure to remit the

necessary renewal premiums was, as a result of appellees' misfeasance, of no legal import.

Accordingly, we reverse the judgment of the court of appeals and over-rule our prior decision in *Morey.*

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.