BLACK, APPELLANT, *v.* GLOBE AMERICAN CASUALTY CO., APPELLEE; GENERAL MOTORS ACCEPTANCE CORPORATION, APPELLANT.

(No. 8566—Decided July 2, 1984.)

*Konrad Kuczak,* for appellant Black.
*Charles W. Deuser II,* for appellee Globe American Cas. Co.

*Daniel A. Nagle,* for appellant GMAC.

BROGAN, P.J. In November 1980 James Black purchased a 1980 Datsun automobile from Tom Harrigan Oldsmobile. This purchase was financed through a loan by General Motors Acceptance Corporation ("GMAC"), which lien is reflected on the title to this vehicle. In December 1981, Odis Scales, deceased, obtained a policy of insurance on the automobile (No. 50637) in which Scales was named the insured and GMAC was designated loss payee. The Globe policy was financed through the Insurance Credit Corporation ("ICC") under a premium finance agreement executed by Scales. The agreement provided for a down payment of $166.25 plus nine monthly installment payments of $40.49.

Scales made the first monthly payment in January 1982, but failed to pay any subsequent installments. On February 19, 1982, ICC sent a notice of default to Scales notifying him that ICC had requested Globe to cancel the policy for reason of nonpayment. The notice also indicated ICC would request Globe to reinstate the insurance policy if the arrearage was paid by March 10, 1982. Scales took no action at this time. On March 4, 1982, ICC sent a notice of cancellation due to non-payment of premium to both Scales and Globe. This notice informed Scales that the policy would be cancelled for non-payment effective March 10, 1982 at 12:01 a.m. Again Scales took no steps to correct the problem at this time.

On March 12, 1982, a letter was sent from Hackney Insurance Agency, the originating agent on the disputed policy, which confirmed the cancellation for non-payment. This correspondence also informed Scales that a policy could be rewritten if he chose to do so. According to the affidavit of Harold Hackney, owner of Hackney Insurance Co., Scales contacted him on March 24, 1982, to discuss replacement insurance coverage. He claims a quotation was immediately forwarded to Scales. Scales never obtained any replacement insurance.

On March 29, 1982, Globe sent a notice of cancellation or nonrenewal to both Scales and the loss payee, GMAC. This notice indicated that cancellation would take effect at 12:01 a.m. on "4-t0-82" [*sic*]. Neither Scales nor GMAC took any action to maintain coverage of the vehicle. Scales was then involved in an automobile accident on April 13, 1982 in which the Datsun automobile was totaled. The balance due on the vehicle to GMAC was $4,828.78. Globe refused to pay on the grounds the policy had been cancelled.

Black then commenced the present action in the Kettering Municipal Court against Globe seeking, *inter alia,* a judgment declaring insurance policy No. 50637 in full force and effect, and for the value of the Datsun to be paid by Globe under the terms and conditions of said policy. In its answer Globe denied the allegations of the complaint and claimed plaintiff had failed to join all necessary parties. Subsequently, plaintiff amended his complaint adding as defendant, GMAC.

Motions for summary judgment were filed by each party wherein Black and GMAC sought to have the policy declared in effect. Globe argued summary relief was appropriate in its favor as the insurance policy was properly and lawfully cancelled prior to the date of the accident.

Per judgment dated August 31, 1983, the trial court agreed with defendant Globe and granted summary judgment in its favor. The court also granted summary judgment in favor of GMAC as against Black for $4,828.78.

From this judgment both Black and GMAC have appealed to this court setting forth various assignments of error. Both appellants' first assignments of er-

ror raise a similar issue and shall therefore be treated together. Black and GMAC respectively assert that:

"The trial court committed prejudicial error in determining 'the policy of insurance was terminated effective March 10, 1982' "; and that

"The trial court committed prejudicial error in determining that the defendant-appellee's policy of insurance with the plaintiff-appellant James H. Black was terminated as of March 10, 1982, and, the trial court compounded its error in granting summary judgment to the defendant-appellee Globe American Casualty Company in lieu of granting summary judgment to the defendant-appellant, the General Motors Acceptance Corporation on the insurance termination issue."

The resolution of these assigned errors revolves around the application of R.C. 1321.81. It is the position of both Black and GMAC that the termination was not effective as the February 19, 1982 notice of default and the March 4, 1982 notice of cancellation due to non-payment of premium were not in conformity with the requirement of paragraph (B) of this statutory provision.

R.C. 1321.81 provides in pertinent part that:

"(A) Where a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this section.

"(B) Not less than ten days' written notice shall be mailed to the insured at his last known address of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period."

Appellants essentially argue the February 19, 1982 notice was defective as it failed to notify of the "intent" to cancel unless cured. The disputed correspondence provided:

"Dear Customer:

"Because of your failure to make proper payment according to your Premium Finance Agreement, we have been obliged to request Globe American Casualty Company to cancel your insurance policy(ies) for reasons of Non-Payment.

"However, we will request Globe American Casualty Company to *reinstate* the insurance policy(ies) referred to above if you pay the amount due of $46.99 by 03/10/82. The amount now due must include payment of the past due installment plus the current installment and any accumulated late charges.

"If your insurance coverage is not reinstated, all payments made following cancellation will be credited to your account. *However, the fact that you continue to make payments to Insurance Credit Corporation does not mean your insurance is in force.* Only Globe American Casualty Company can advise you as to the status of your insurance coverage. [Emphasis added.]"

We would agree with the argument of GMAC that this letter would seem to indicate that the policy was already cancelled as of the date of the mailing. The curative language provides the insurance could be "reinstate(d)" upon payment. This language clearly implies cancellation has occurred as one cannot reinstate that which is already effective. We do not agree however that this defect necessarily operates as an estoppel of the cancellation attempt.

The apparent statutory purpose behind R.C. 1321.81 is to provide protection to the premium finance company, the insurer, and the insured. It protects both the finance company and insurer as it provides recourse as against a non-paying customer. Thus, it provides the insurer an escape from exposure which

it has not been compensated for. It also provides some leverage to the premium finance company to obtain payment from its customers without resort to expensive legal proceedings.

The primary purpose would appear, however, to give the customer-insured some protection from arbitrary cancellation of insurance coverage for which it had bargained. In essence it allows the customer at least a ten-day grace period to get his premium payments up to date following notice of failure to timely pay. The statute is designed to give a consumer who has inadvertently failed to meet his obligations the opportunity to be made aware of the default and to correct same in a reasonable time. When such is accomplished it would be inherently unfair to burden both the finance company and the insurer with the obligation to continue coverage due to an overly technical application of the statutory language.

Although the initial notice does not state ICC "intended" to cancel the coverage it certainly put the insured on notice that he was delinquent in his payments. Thus, a reasonable person would certainly be alerted to the fact that his insurance coverage is in jeopardy. The notice also indicated certain steps could easily be performed in order to have the coverage continued. Yet, it is undisputed that the insured herein took no steps to assure continued coverage.

The subsequent notice of March 4, 1982 would put the insured on notice that his coverage was still in effect until March 10, 1982. This notice stated the following:

"As provided in the terms and conditions of your Premium Finance Agreement with Insurance Credit Corporation, your insurance policy (above) with Globe American Casualty Company will be CANCELLED FOR NON-PAYMENT. This cancellation takes effect at 12:01 A.M. Standard Time on 03-10-82.

"If money is due you after cancellation a check will be sent to your agent. If money is still due Insurance Credit Corporation after cancellation, you will receive a bill."

The "will be" language indicates an intent on behalf of ICC to have the policy cancelled effective March 10. When read in conjunction with the previous correspondence the insured is made aware of the fact that if he pays before that date his coverage will be continued.

Thus, even if the initial notice was defective for failing to state the "intent" to cancel, it was subsequently cured by the March 4, 1982 correspondence. As the statute requires a ten-day notice, cancellation could not be effective until sometime on or after March 14, 1982. As the accident occurred some one month later we are of the opinion that the cancellation was effective long before that time.

In any event, even had the notice been defective pursuant to R.C. 1321.81(B), the record reveals the insured had actual awareness of the cancellation yet took no steps to rectify the situation. As evidenced by the affidavit of Harold Hackney, the insured contacted him in late March seeking a quotation for replacement insurance. This certainly indicates the insured was aware that he was not covered. He then chose to continue operating the vehicle knowing he was not insured. Under the circumstances it would be inherently unfair to impose liability on the insurer. Cf. *Shreve* v. *Leader Natl. Ins. Co.* (June 30, 1983), Clermont App. No. 83-02-016, unreported (wherein the court stated that where notice of cancellation came as no surprise and the insured did nothing in response to the notice, they were estopped from asserting the notice was invalid for the reason it was defective).

Appellants' first assignments of error are overruled.

Appellant Black submits as his second assignment of error that:

"The trial court committed prejudicial error in allowing the Insurance Credit Corporation to cancel the policy of insurance issued by defendant-appellee, Globe American Casualty Co., without proof of having a power of attorney authorizing it to do so as is required by statute."

Black relies upon R.C. 1337.06 to support his claim that there was no proof that ICC had a power of attorney authorizing it to cancel the insured's policy. We find absolutely no merit to that claim.

R.C. 1337.06 provides:

"A power of attorney for the transfer of personal property or the transaction of business relating thereto, in order to be admitted to record as provided in section 1337.07 of the Revised Code, must be signed, witnessed, and acknowledged in the same manner as deeds and mortgages under section 5301.01 of the Revised Code. When so executed, acknowledged, and recorded, a copy of the record thereof, certified by the county recorder, with his official seal affixed thereto, shall be received in all courts and places within this state as prima-facie evidence of the existence of such instrument and as conclusive evidence of the existence of such record."

In the present matter we are not dealing with the power of attorney to transfer personal property, nor the admissibility of that record in a court of law. Rather we are concerned with a power of attorney authorizing the creditor to discontinue its obligation to incur further indebtedness when the debtor is delinquent in his obligation to the creditor. Such authority was clearly laid out in the premium finance agreement and was duly executed by the insured-customer, Odis Scales. Such authority is regularly provided for in such debtor-credit transactions and recognized by courts of law without the rigid adherence to formalities provided in granting to another the authority to transfer someone else's real or personal property.

Appellant Black's second assignment of error is without merit.

Black maintains in his third assignment of error that:

"The trial court committed prejudicial error in failing to recognize that the defendant, Globe American, had failed to comply with Revised Code Sec. 1321.81(D) with respect to the defendant, General Motors Acceptance Corporation."

Black argues that the notice of cancellation was further defective as it failed to properly notify the loss payee, GMAC, pursuant to R.C. 1321.81(D).

Paragraph (D) of R.C. 1321.81 provides:

"All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be cancelled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under this section. The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation."

It is undisputed that Globe sent no notice of cancellation to GMAC until March 29, 1982. That notice stated that cancellation would be effective on "4-t0-82" [sic]. As indicated by the affidavit of Drew Barkley, Operational Vice-President of Globe, the notice was sent to inform GMAC, as a courtesy, that coverage would be cancelled on April 10, 1982.

Initially, we point out that paragraph (D) has no application in this mat-

ter. The paragraph begins, "[a]ll statutory, regulatory, and contractual restrictions providing that the insurance contract may not be cancelled unless notice is given * * *." We have not been directed to any such statutory, regulatory or contractual restriction by the parties on appeal. Nor was such a restriction, if in fact one exists, brought to the attention of the trial court.

App. R. 12(A) provides that appeals shall be determined on their merits on the assignments of error set forth in the briefs required by Rule 16. App. R. 16(A)(4) requires that the brief contain an argument which gives the reasons for the contentions, "with citation to the authorities, statutes and parts of the record relied on." As stated above we have not been provided any authority supporting Black's claim that R.C. 1321.81(D) applies in this matter. Consequently, GMAC was not statutorily entitled to any notice whatsoever.

The fact does remain however that Globe did send notice to GMAC indicating coverage would be extended to sometime in April. Globe contends such was done as a courtesy to GMAC. This notice was mailed two weeks prior to the accident, yet GMAC took no steps to protect itself in the event the car was damaged. Thus, it appears Globe made a good faith effort to extend coverage to protect GMAC's interest for a reasonable time. GMAC's failure to take advantage of Globe's courtesy should not now be used to penalize it.

Black's third assignment of error is dismissed.

Under his fourth assignment of error Black argues:

"The trial court committed prejudicial error in recognizing the validity of the premium finance agreement which was the basis for the notices of cancellation relied upon by the defendant-appellee, Globe American Casualty Company."

Black essentially argues that the premiums had been paid in advance and as such the policy could not be cancelled. Black figures that at a total premium of $496 plus a $34.66 finance charge provided for in the finance agreement, the daily cost of insurance was $1.4538. Since he paid a $166.25 down payment plus one monthly installment of $40.49, he argues sufficient consideration was paid for one hundred forty-two days of coverage. Black therefore concludes it was error to allow ICC to cancel the policy when less than half that time had transpired. Once again we find no merit to Black's argument.

The Ohio Legislature in R.C. 1321.78 et seq. has provided the authority for premium finance companies to exist and to enter into premium finance agreements in the state of Ohio. The purpose of these arrangements is to provide a means for people to obtain insurance who could not otherwise afford it. Thus, the legislature has set forth standards for the agreements which the parties may enter into.

A review of the ICC agreement reveals it meets the standards set forth in R.C. 1321.78. R.C. 1321.81 allows for the cancellation of the insurance policies covered in the finance agreement for default in payment. As discussed above this was properly accomplished in the present matter. The fact there remained unearned premiums upon cancellation of the contract in no way alters its validity.

The legislature specifically provided for circumstances such as this in R.C. 1321.82. Upon cancellation of a financed insurance contract, this statute provides for a refund of the unearned premiums to the insured. The record reveals such a refund was in fact made. We therefore find no merit to this argument.

Black's fourth assignment of error is overruled.

Black's final assignment of error alleges that:

"The trial court committed prejudicial error in failing to grant summary judgment on behalf of the plaintiff, James Black, and on behalf of the defendant, General Motors Acceptance Corporation."

This assignment of error as argued raises no new issues not previously addressed in the assignments of error discussed above. Having concluded ICC and Globe did effectively terminate coverage prior to the accident we find no merit to this claim.

Black's fifth and final assignment of error is dismissed.

Appellant GMAC maintains under its second and final assignment of error that:

"The trial court committed prejudicial error in not finding that the General Motors Acceptance Corporation, as a loss payee, should be paid by the defendant-appellee the sum of $4,828.78, with interest at the contract rate from October 7, 1982 and for its costs."

This argument is premised upon the assumption we found the disputed policy in full force and effect at the time of the accident. As this proved not to be the case GMAC's second assignment of error is overruled.

Having concluded that policy No. 50637 was effectively cancelled prior to the April 13, 1982 accident, the trial court's award of summary judgment in favor of defendant Globe Insurance Co. was appropriate. No appeal having been taken from the trial court's award of $4,828.78 plus interest in favor of defendant GMAC as against James Black, that judgment shall also be affirmed.

*Judgment affirmed.*

WILSON and WEBER, JJ., concur.