LOVE, Appellant,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellee.

[Cite as *Love v. Motorists Mut. Ins. Co.* (1993), 86 Ohio App.3d 394.]

Court of Appeals of Ohio,
Athens County.

No. CA 1514.

Decided Feb. 16, 1993.

*Rogers & Godbey Co., L.P.A.*, and *George C. Rogers*, for appellant.

*Theisen, Brock, Frye, Erb & Leeper Co., L.P.A., Paul T. Theisen* and *Colleen E. Cook*, for appellee.

HARSHA, Judge.

Ronald Love, as next friend of his minor child, Jason Love, appeals from a judgment which dismissed his complaint against Motorists Mutual Insurance Company for uninsured motorist coverage.

Appellant Love assigns the following errors:

"1. The trial court erred in denying plaintiff's motion for summary judgment and motion for reconsideration on August 21, 1990 and November 2, 1990, respectively.

"2. The trial court erred in entering judgment for defendant after a court trial finding that an insurance policy may be cancelled even though the notice was not sent in the time required by statute and without requiring proof that such nonstatutory notice was ever actually received by the insured.

"3. The trial court erred in entering judgment for defendant after a trial to the court when there was *no* evidence submitted that a concellation [*sic*] notice containing the appeal rights required under 3937.32(F) R.C. was ever sent to the insured." (Emphasis *sic*.)

In March 1986, appellant and his wife, Jill A. Love, purchased an automobile liability insurance policy from appellee Motorists Mutual. The insurance policy, as subsequently amended, provided:

"TERMINATION

"A. Cancellation. This policy may be cancelled during the policy period as follows:

" * * *

"2. We may cancel, subject to paragraph 3 below, by mailing to the named insured shown in the Declarations at the address shown in this policy:

"a. at least 10 days notice:

"(1) if cancellation is for nonpayment of premium[.]

" * * *

"D. Other Termination Provisions.

"1. If the law in effect in your state at the time this policy is issued, renewed or continued:

"a. requires a longer notice period;

"b. requires a special form of or procedure for giving notice; or

"c. modifies any of the stated termination reasons;

"we will comply with those requirements.

"2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

" * * *

"4. The effective date of cancellation stated in the notice shall become the end of the policy period."

The insurance policy also provided $50,000 of uninsured motorist coverage.

On March 22, 1988, appellee received late payment from appellant for the March 12, 1988 renewal of the automobile insurance policy. On May 24, 1988, appellee sent a notice to appellant and his wife, indicating that a premium in the amount of $134.80 was due on the policy by June 12, 1988. No payment was received from appellant and his wife by June 12, 1988. On June 20, 1988, appellee mailed an installment-lapse notice to appellant and his wife which stated:

"ATTENTION POLICYHOLDER

"PREMIUM PAYMENT WAS DUE ON 6/12/88. YOUR POLICY WILL BE CANCELLED IF PREMIUM PAYMENT IS NOT RECEIVED BY THE COMPANY AS OF 12:01 A.M., S.T. ON 06/30/88."

No payment was received by appellee on the specified date and appellant and his wife's insurance policy was canceled. On August 23, 1988, Jason Love was struck while riding a bicycle by a pickup truck driven by Melvin E. Lewis, an uninsured motorist. Appellant brought suit on behalf of his son and obtained a default judgment in the amount of $355,000 from Lewis. After being unable to collect any part of the judgment from Lewis, appellant demanded payment from appellee of $50,000, *i.e.,* the limit of the uninsured motorist coverage provided by the policy. Appellee, by letter dated May 25, 1989, rejected appellant's demand on the basis that the insurance policy had been canceled prior to his son's accident.

On December 11, 1989, appellant filed a complaint seeking to recover $50,000 from appellee pursuant to the uninsured motorist provision of the policy. Appellee filed an answer which asserted that the policy had been canceled prior to Jason Love's accident. Appellant amended his complaint to add a bad faith claim. On February 23, 1990, appellant filed a motion for summary judgment, attaching an affidavit of his attorney. Appellee subsequently filed a memorandum in opposition, attaching affidavits of several of its employees. The trial court overruled appellant's motion for summary judgment as well as a subsequently filed motion for reconsideration of the same.

After a bench trial, the court issued a decision determining that appellee had properly canceled the insurance policy for nonpayment of premiums prior to appellant's son's accident. The trial court subsequently filed a judgment entry finding in favor of appellee and dismissing appellant's complaint and a *nunc pro tunc* entry determining "no just reason for delay of any appeal."

■ Appellant's first assignment of error asserts that the trial court erred in overruling his motions for summary judgment and reconsideration. Initially, we

note the appropriate rule of law concerning interlocutory orders such as orders denying motions for summary judgment:

"Since they are not final orders, as defined in R.C. 2505.02, interlocutory orders are not appealable under R.C. 2505.03. This does not mean that they are not appealable at all—claimed prejudicial error with respect to an interlocutory order may be reviewed on appeal after a judgment, decree, or final order is entered in the case in which the interlocutory order was entered."

In *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293, at paragraph one of the syllabus, the Supreme Court of Ohio explicitly held that a "trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." See, also, *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 91–93, 554 N.E.2d 1292, 1294–1296 (denial of summary judgment is not effectively unreviewable on appeal from a final judgment). In this regard, the dissent would hold, contrary to the foregoing authorities, that the denial of a motion for summary judgment becomes moot and can never be reached on appeal. However, if an appellant was entitled to summary judgment, the overruling of his or her summary judgment motion clearly prejudices him or her and this prejudice is not abated by an opportunity to have a trial in the case. The issue is not moot because summary judgment and judgment following a trial are based on different evidence and are guided by different legal standards. Additionally, none of the parties contends on appeal that the issues raised under appellant's first assignment of error are moot and unreviewable. Finally, if we were to adopt the position expressed by the dissent, there would be less incentive for trial courts to apply Civ.R. 56 correctly, *i.e.*, they could overrule all summary judgment motions with the knowledge that their holdings in this regard could never be reviewed on appeal. Consequently, we now turn to the merits of appellant's first assignment of error.

In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, *i.e.*, we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883; *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving

party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Appellant contends that the summary judgment evidence indicated that appellee's notice of cancellation did not comply with R.C. 3937.32(E) because it did not provide at least ten days' notice of cancellation from the date of mailing. Thus, he argues that the attempted cancellation was not effective, with the result that the policy remained operational. R.C. 3937.32 provides:

"*No cancellation* of an automobile insurance policy *is effective, unless it is pursuant to written notice* to the insured of cancellation. *Such notice shall contain:*

" * * *

"(E) Where cancellation is for nonpayment of premium *at least ten days notice from the date of mailing of cancellation* accompanied by the reason therefore shall be given[.]" (Emphasis added).

In construing a statute, the court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461. In interpreting a statute, the words must be taken in their usual, normal or customary meaning. *Independent Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817. Courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80. The language of R.C. 3937.32 states that "[n]o cancellation * * * is effective, unless it is pursuant to written notice" and then states that "[s]uch notice shall contain" the enumerated criteria, including the ten days' notice provision specified in subdivision (E).

The summary judgment evidence included two affidavits of Ruby Bailey, data control supervisor for appellee. She indicated that based upon appellee's microfiche records, she reproduced the notice of cancellation mailed to appellant and his wife on June 20, 1988. It advised them that the automobile insurance policy would be canceled on June 30, 1988 at 12:01 a.m. if they failed to pay the premium due. Pursuant to R.C. 1.14, the first day (June 20, 1988) is excluded and it might be argued that since the statute does not count fractions of a day, the notice was sufficient. However, this construction of R.C. 1.14 would appear unreasonable, particularly since the phrase "at least," as utilized in both R.C.

3937.32(E) and the parties' insurance policy's cancellation provisions, is commonly used to express the exclusion of both the first and the last days of a given period of time. See, generally, 88 Ohio Jurisprudence 3d (1989) 287, Time, Section 30. As the trial court noted in its entry overruling appellant's summary judgment motion, the notice did not strictly comply with R.C. 3937.32(E) since a proper notice would not have made cancellation effective until July 1, 1988.

The issue then becomes what the effect is of appellee's noncompliance with R.C. 3937.32(E). In *DeBose v. Travelers Ins. Cos.* (1983), 6 Ohio St.3d 65, 6 OBR 108, 451 N.E.2d 753, the Supreme Court of Ohio held at its syllabus that "[i]n order to terminate an automobile insurance policy for nonpayment of premiums and within the mandatory renewal period set forth in R.C. 3937.31, the issuer of the policy must send, pursuant to R.C. 3937.30 *et seq.*, a notice of cancellation to the policyholder." Appellant contends that *Debose* required the trial court to grant his motion for summary judgment (and his motion for reconsideration) once it determined that appellee's notice did not strictly comply with R.C. 3937.32(E).

The syllabus of an opinion issued by the Supreme Court of Ohio states the law of the case, and, therefore, all lower courts in this state are bound to adhere to the principles which it sets forth. *Smith v. Klem* (1983), 6 Ohio St.3d 16, 18, 6 OBR 13, 15, 450 N.E.2d 1171, 1173; *State v. Decker* (Sept. 5, 1990), Highland App. No. 725, unreported, at 7, 1990 WL 127070. Furthermore, it is generally improper for a lower court to determine that a syllabus of an Ohio Supreme Court opinion is obiter dictum. *Smith, supra; Mate v. Stow City School Dist. Bd. of Edn.* (1988), 62 Ohio App.3d 265, 269, 575 N.E.2d 477, 479. Nevertheless, Rule 1(B) of the Supreme Court Rules for the Reporting of Opinions provides that the "syllabus of a Supreme Court opinion states the controlling point or points of *law decided in and necessarily arising from the facts of the specific case* before the Court for adjudication." (Emphasis added.) See, also, *Grange Mut. Cas. Co. v. Smith* (1992), 80 Ohio App.3d 426, 431, 609 N.E.2d 585, 588. As noted by the trial court in its entry overruling appellant's motion for summary judgment, *DeBose* "does not specifically address the issue of a notice of cancellation that is mailed in compliance with the statute but miscalculates the ten-day notice period." In *DeBose*, there was no evidence that *any* notice of cancellation had been sent.

Post–*DeBose* Ohio appellate decisions have held that the failure to include the date of the notice, as required by R.C. 3937.32(B), renders the attempted cancellation ineffective. See *Skipper v. Sentry Ins. Co.* (July 13, 1987), Stark App. No. CA–7046, unreported, 1987 WL 14297. Moreover, courts have held that the failure to include in the notice a statement of review rights, as required by R.C. 3937.32(F), also renders the attempted cancellation ineffective. *Balster v. Poeppelman* (Sept. 27, 1989), Auglaize App. No. 2–87–24, unreported, 1989 WL

111965; *Am. Fire & Cas. Co. v. Erd* (June 12, 1987), Lucas App. No. L–86–282, unreported, 1987 WL 7613; *Bollinger v. Empire Fire & Marine Ins. Co.* (Dec. 23, 1986), Lawrence App. No. 1785, unreported, 1986 WL 14896; see, also, *Lucido v. Motors Ins. Corp.* (Nov. 19, 1981), Mahoning App. No. 81 CA 32, unreported, 1981 WL 4813. However, none of the foregoing cases addresses the issue presented by this appeal, *i.e.*, whether a cancellation notice that gives less than the ten-day notice specified in R.C. 3937.32(E) renders the notice ineffective *in toto.*

In a pre–*DeBose* decision, the Twelfth District Court of Appeals held that although the cancellation notice in question did not strictly comply with R.C. 3937.32(E), the cancellation became effective when the statutory period of ten days was completed. *Shreve v. Leader Natl. Ins. Co.* (June 30, 1983), Clermont App. No. 83–02–016, unreported, at 3, 1983 WL 4420. In the post–*Debose* case of *Black v. Globe Am. Cas. Co.* (1984), 19 Ohio App.3d 58, at 61, 19 OBR 141, at 143, 482 N.E.2d 1278, at 1281, the Second District Court of Appeals cited *Shreve* and noted that it would be "inherently unfair to impose liability on the insurer" where the insured knew that he was not covered, but still chose to continue operating the vehicle. The trial court relied on *Shreve* and *Black* to overrule appellant's motions for summary judgment and reconsideration.

One treatise author has noted:

"[W]here the policy or statute fixes a 5–day limit, the policy remains in full force and effect for that length of time after receipt of the notice of cancellation, even though the notice fixes a shorter period of time, since the insured is entitled to the full number of days allowed by statute or the policy, to enable him, if he so desires, to protect himself by other insurance before the canceled policy expires.

"The fact that the notice contains a time limitation which is void because it is less than that required by the policy does not void the notice or make it inoperative. To the contrary, the notice takes effect as a notice, the insured, however, being entitled to the full period specified by the policy. Thus, the notice is effective, but is to be read as though it stated the proper date which would be allowed by the policy." (Footnotes omitted.) 17 Couch on Insurance 2d (Rev.Ed. 1983) 629–630, Section 67:169.

Couch represents the majority view on this issue. See, generally, 45 Corpus Juris Secundum (1946) 91–92, Insurance, Section 450(c); 43 American Jurisprudence 2d (1982) 459–460, Insurance, Section 389; Annotation, Effect of Attempt to Terminate Insurance or Fidelity Contract Upon Notice Shorter than that Stipulated in Contract (1964), 96 A.L.R.2d 286, 290; see, also, *J.M.P.H. Wetherell v. Sentry Reinsurance, Inc.* (E.D.Pa.1990), 743 F.Supp. 1157, 1173–1174, and the numerous cases cited therein; *Scanlon v. Empire Fire & Marine Ins. Co.* (App.1990), 117 Idaho 691, 694, 791 P.2d 737, 740.

Although there is authority to the contrary,[1] we are persuaded that the majority view is correct. R.C. 3937.30 *et seq.* are primarily designed to protect the public from the dangers which uninsured motorists pose by giving insureds notice of any planned cancellation of their policies in time for them to secure new coverage. *DeBose, supra,* 6 Ohio St.3d at 67, 6 OBR at 109, 451 N.E.2d at 755. The majority view is reasonable and does not contravene this purpose. 43 American Jurisprudence 2d (1982) 459, Insurance, Section 389. We hold, in accordance with the prevailing view, that rather than rendering the cancellation notice completely ineffective, the statutorily proscribed time limit merely requires the notice to be read as though it states the proper date, *i.e.,* the insured is entitled to the full ten-day period before the policy can be terminated for nonpayment of premiums.[2]

Since the accident that involved appellant's son occurred well after the appropriate ten-day period (pursuant to both R.C. 3937.32[E] and the parties' insurance policy), appellant was not entitled to summary judgment or reconsideration of the trial court's denial of summary judgment on his uninsured motorists claim. Appellant's first assignment of error is overruled.

■ Appellant's second assignment of error asserts that the trial court erred in entering judgment for appellee after finding that an insurance policy may be canceled even though the notice was not sent in the time required by R.C. 3937.32(E) and without requiring proof that the nonstatutory notice was ever actually received by the insured. Appellant's first contention has in effect been disposed of under the first assignment of error.

Appellant further contends that the statutory provisions, as well as *Shreve* and *Black,* required actual receipt of the defective notice in order to effect a cancellation of the policy by estoppel or otherwise. This issue of statutory construction presents a legal question which we independently address without deference to the trial court's determination.

Initially, we note that the parties' insurance policy expressly provided that "[p]roof of mailing of any notice shall be sufficient proof of notice." Appellant does not argue that such a provision is void as being against public policy. Moreover, R.C. 3937.33 provides that "[a]n insurer may cancel an automobile insurance policy at such time prior to its expiration for such reasons as may be permitted by section 3937.31 of the Revised Code, *by mailing to the insured*

---

1. See, *e.g., Pearson v. Nationwide Ins. Co.* (1989), 325 N.C. 246, 382 S.E.2d 745, where the Supreme Court of North Carolina held that insurers must strictly comply with the statutorily required notice period of time before cancellation for nonpayment of premiums.

2. By so holding, we do not mean to suggest that the view on this issue expressed by appellant, the dissent, and a minority of jurisdictions is completely untenable.

* * * a notice of cancellation pursuant Section 3937.32 of the Revised Code." (Emphasis added). By its own terms, the statute requires only mailing of the notice, not actual receipt, to effect cancellation. See *DeBose, supra,* at syllabus (insurer must *send* a notice); *Donaldson v. Grange Mut. Cas. Co.* (Dec. 11, 1989), Clinton App. No. CA89–07–011, unreported, 1989 WL 149411; *Hawks v. State Farm Mut. Auto. Ins. Co.* (Nov. 26, 1990), Butler App. No. CA90–02–032, unreported, 1990 WL 183500; *Toomey v. Haley* (Feb. 12, 1986), Summit App. No. CA 12262, unreported, 1986 WL 2231; cf. *Casto v. State Farm Mut. Auto. Ins. Co.* (1991), 72 Ohio App.3d 410, 415–416, 594 N.E.2d 1004, 1007–1008 (issue is unclear). Had the General Assembly intended to require receipt, it would have been a simple matter to require the use of certified mail, with return receipt. Accordingly, the trial court did not err in determining proof of actual receipt of the cancellation notice was not needed. Appellant's second assignment of error is overruled.

Appellant's third assignment of error asserts that the trial court erred in entering judgment for appellee when there was no evidence submitted at trial that a cancellation notice containing the appeal rights required under R.C. 3937.32(F) was ever sent to the insured. As previously noted, the failure of a cancellation notice to comply with R.C. 3937.32(F) renders the attempted cancellation ineffective. *Balster; Am. Fire, supra.*

Appellant appears to attack the sufficiency of the evidence. However, appellant did not raise this issue through a Civ.R. 41(B)(2) motion for dismissal and thus arguably waived this issue. Cf., *e.g., Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464. Assuming, *arguendo,* that this issue was preserved for appeal as a weight of the evidence argument, we find enough evidence in the record to support a finding that the notice mailed to appellant contained the statement of appeal rights required by R.C. 3937.32(F). See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79, 10 OBR 408, 409, 461 N.E.2d 1273, 1275, for the proposition that judgments supported by some competent credible evidence will not be reversed as being against the weight of the evidence.

At trial, although the court excluded Bailey's recreation of the cancellation notice sent to appellant, Bailey testified at length about appellee's computer billing procedure. She specified that cancellation notice form DPC–555 was mailed on June 20, 1988 to both appellant and his wife as well as to their insurance agent, Harold W. Snow. The copy of the notice sent to Snow was introduced into evidence. It contained the information required by R.C. 3937.-32(F). There was a discrepancy between the number of notices specified on the printer log (four hundred eighteen) and that recorded by appellee's employees as generated and mailed (four hundred nineteen). However, Bailey testified that

the printer log was inaccurately showing one fewer notice than it was actually producing at that time. From this evidence, the trial court could circumstantially infer that a notice of cancellation which was similar to the one sent to Snow, including the R.C. 3937.32(F) information, was mailed to appellant on June 20, 1988. Circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. Accordingly, there was some competent credible evidence to support the trial court's conclusion that appellee proved that the insurance policy was canceled pursuant to R.C. 3937.30 *et seq.* For the foregoing reason, appellant's third assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, J., concurs.

GREY, J., concurs in part and dissents in part.

GREY, Judge, concurring in part and dissenting in part.

I respectfully concur in part and dissent in part.

I disagree with the majority, on logical or perhaps epistemological grounds, on whether denial of a summary judgment can ever be reversible error.

Granting a motion for summary judgment may be a final order and may be reversible error because it terminates the case.

Denial of a motion for summary judgment, however, can never be a final appealable order, nor can it ever be reversible error. When a trial court denies summary judgment, even though reasonable minds could have reached only one conclusion, the case is still pending in the trial court and not appealable at that time. A denial of summary judgment can never be a final order.

Once a court has denied a motion for summary judgment, it will have to take evidence in the matter. If reasonable minds could have reached only one conclusion from the evidence, then the party would win on the merits and could not appeal. If the court decides it the other way, then the decision is against the manifest weight of the evidence and would be reversible because of that error. The denial of a motion for summary judgment then becomes moot and can never be reached on appeal.

As to the majority's concern that a trial court could overrule all motions for summary judgment, I do not perceive it as a problem either practically or analytically. Trial courts have more than enough to do and not likely to overrule a valid motion for summary judgment simply because it might escape appellate review. Having done so, they would have to conduct a full scale trial. Practically

speaking, there is a far greater incentive for the trial courts to properly apply Civ.R. 56 than this court's power of review.

Analytically, it is much the same result. After having overruled a valid motion for summary judgment and after having gone through a complete trial, the evidence would still be the same, *i.e.*, reasonable minds could disagree about it, and the moving party would prevail. If the moving party did not prevail, the verdict would be against the manifest weight of the evidence. Back to square one. I would overrule the first assignment of error for these reasons.

I would sustain the second assignment of error.

R.C. 3937.32(E) requires that when cancellation is for nonpayment of the premium, the insured must be given ten days notice. In this case, the notice sent out on June 20, 1988 said the policy would be canceled as of "June 30, 1988 at 12:01 a.m." This is, of course, only nine days. Love contends that where the notice is invalid and ineffective when it was sent, it can never ripen into a valid notice of cancellation. Thus, his policy was never canceled and is still effective. Motorists contends that although the notice was ineffective to cancel the policy as of June 30, 1988, it became effective on the tenth day despite the mistake.

The weight of authority supports Motorists' position. Appellee cites the discussion in 17 Couch on Insurance 2d (Rev.Ed.1983) 629, Section 67:169, the cases there and two Ohio cases, *Black v. Globe Am. Cas. Co.* (1984), 19 Ohio App.3d 58, 19 OBR 141, 482 N.E.2d 1278, and *Shreve v. Leader Natl. Ins. Co.* (June 30, 1983), Clermont App. No. CA83–02–016, unreported, 1983 WL 4420. *Black* and *Shreve* rely on an analysis of basic public policy and equitable principles. They reason that the purpose of the statute is to give the policyholder notice of the cancellation so he can avoid being uninsured, either by paying the premium or obtaining other coverage. So even if the cancellation date is incorrect, the insured still knows he has the ten days to act, and it would be inherently unfair to impose liability on the insurer for a technical failure.

Appellant Love relies on *DeBose v. Travelers Ins. Co.* (1983), 6 Ohio St.3d 65, 6 OBR 108, 451 N.E.2d 753, and claims that this case, not the appellate decisions or the foreign decisions, is controlling. I find the *DeBose* case is not exactly on point because in that case there was a complete failure to comply with the statute. As noted in a footnote, the court found that the notice given did not comply with the statute and there was no real proof it had ever been mailed.

*DeBose* was construed, however, by the Third District as requiring strict compliance in *Balster v. Poeppelman* (Sept. 27, 1989), Auglaize App. No. 2–87–24, unreported, 1989 WL 111965. The *Balster* court cited and relied on *Lucido v. Motors Ins. Corp.* (Nov. 19, 1981), Mahoning App. No. 81 CA 32, unreported, 1981 WL 4813, another strict-compliance case.

There are also strong public policy arguments for the "strict compliance" position. If we adopt a "ten-days-means-ten-days-and-nothing-less" strict-compliance standard, in the short run it will result in some insurance companies having to provide coverage without having received their premium, which as the *Shreve* court said, is an inequitable result.

On the other hand, this issue keeps rearing its head over the years, *e.g.*, *Lucido* in 1981, *Shreve* in 1983, *Black* in 1984 and *Balster* in 1989. In the long run, some insurers, perhaps only a small minority, will keep sending out noncomplying notices, and this means the courts will have to keep deciding whether the particular form of noncompliance in the case is sufficient compliance. Nothing is resolved.

I believe this lack of resolution is what the Supreme Court sought to eliminate with its holding in *DeBose*. The primary function of any judicial system is to resolve disputes. As a corollary to that, it is the duty of the courts to apply the actual language of a statute as written. If the statute says ten days' notice, under the ordinary rules of construction, it must mean ten days' notice. If giving the statute its precise construction will also eliminate future cases on the same issue, there is even a stronger reason for adhering to a strict construction. I would find that *DeBose, supra,* is controlling here and that it sets a strict-compliance standard for R.C. 3937.32(E).

For the very same reasons, I find that the other argument advanced in support of this assignment of error, relating to proof of the receipt of the notice, is not persuasive. The statute says the insurer must mail notice of the cancellation, but says nothing about receipt. The legislature was aware, no doubt, that not every letter mailed is properly delivered and received, but nonetheless it chose mailing as the standard of compliance. Much as we cannot rewrite the ten-day standard, we cannot rewrite the mailing standard. I would sustain assignment of error two and reverse the decision of the trial court. I concur in overruling assignment of error three. Thus, I dissent in part.