19 P.3d 1089 (2001)
105 Wash.App. 194
OLIVINE CORPORATION, a Washington corporation, Respondent/Cross Appellant,
v.
UNITED CAPITOL INSURANCE COMPANY, a Wisconsin corporation, Appellant/Cross Respondent.
No. 46096-0-I.
Court of Appeals of Washington, Division 1.
March 12, 2001.
*1090 Steven Randolph Hager, Craig Powell Hayes, Ludwigson Thompson Hayes & Bell, Bellingham, for Respondent.
Jeffrey C. Grant, Grant Law Firm, Seattle, for Appellant.
WEBSTER, J.
Clearwater Resource Recovery, an incinerator operator, procured pollution insurance through United Capitol Insurance Company and financed the premiums through TEPCO Premium Finance, LLC. When Clearwater failed to make payments, TEPCO sent it a notice of cancellation. Olivine Corporation, the property owner and an additional named insured, did not receive such notice. When the Whatcom County Health Department demanded that Olivine clean up the operations on its property, Olivine tendered such costs to United Capitol. United Capitol refused to provide coverage, citing the cancellation of the policy. Olivine sued United Capitol for coverage. Finding that United Capitol failed to mail a notice of cancellation to Olivine as required by Washington statute, the trial court granted summary judgment to Olivine.
United Capitol appeals arguing that the trial court erred in (1) finding that the cancellation was not effective as to Olivine, (2) entering summary judgment on damages, and (3) awarding attorney fees and costs greater than the lodestar amount. In its cross appeal, Olivine maintains that the trial court should have awarded more attorney fees to offset the contingency agreement it has with its attorneys. We affirm because Washington law requires the insurer to notify an interested party of cancellation. In addition, we cannot say that the trial court erred regarding damages or abused its discretion in increasing the lodestar fee based on Olivine's contingency agreement.

FACTS
Clearwater Resource Recovery, Inc. leased property from Olivine Corporation and operated an incinerator on the property. According to the lease, Clearwater had an obligation to obtain pollution liability insurance and name Olivine as an additional insured. Clearwater obtained such coverage through United Capitol Insurance Company and financed the premiums through TEPCO Premium Finance, LLC. The policy commenced on October 27, 1997 and included an endorsement that listed Olivine as an additional named insured. TEPCO had power of attorney from Clearwater to cancel the policy if Clearwater did not make its payments.
When Clearwater failed to make payments in January 1998, TEPCO decided to cancel the policy and recover unearned premiums from United Capitol. TEPCO sent a notice of cancellation to Clearwater on February 17, 1998. Olivine, however, never received a notice of cancellation. In March, the Whatcom *1091 County Health Department cited Olivine for regulation violations and demanded that Olivine clean up the property or face permit revocation, civil penalties, abatement costs, administrative costs, and related liens on its property. Olivine sought coverage for the clean up costs from United Capitol. At first, United Capitol agreed to provide coverage for clean up costs on Olivine's property. Two months later, after discovering that TEPCO had sent a notice of cancellation, United Capitol refused to provide coverage.
Olivine sued United Capitol directly for coverage. Early in the litigation, both parties moved for summary judgment on the issue of liability. Finding that the cancellation was not effective as to Olivine, the trial court granted Olivine's motion for summary judgment and denied United Capitol's motion. Although damages remained an issue, United Capitol filed an interlocutory appeal. A court commissioner dismissed the appeal without prejudice because it was not yet appealable as a matter or right.
Later, the trial court granted summary judgment on the issue of damages and awarded Olivine $434,300.17, with interest. The court also awarded Olivine $40,000.00 in attorney fees and $550.99 in costs. United Capitol timely filed its Notice of Appeal. Olivine appeals the attorney fee award.

DISCUSSION

I.

Notice of Cancellation
RCW 48.56.110 regulates the cancellation of insurance policies by premium finance companies like TEPCO. According to RCW 48.56.110(2), a premium finance company may not cancel an insurance policy without first mailing 10 days' written notice to the insured of its intent to cancel. It is undisputed that TEPCO did not mail such notice to Olivine. And, it appears undisputed that TEPCO requested, in the name of Clearwater, cancellation of the insurance policy under RCW 48.56.110(3) by mailing to United Capitol and Clearwater a notice of cancellation. TEPCO did not mail the notice of cancellation to Olivine.
The critical issue in this case is the application of RCW 48.56.110(4) to United Capitol. RCW 48.56.110(4) requires the insurer to give any statutorily required notice on behalf of itself to third parties within two business days after receiving the notice of cancellation:
All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in [sic] behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.
RCW 48.56.110(4) (emphasis added). United Capitol argues that it had no duty to provide notice to Olivine. Yet, RCW 48.56.110(4) clearly states that all statutory restrictions apply and that the insurer must give the prescribed notice on behalf of itself. Ins. Mgmt., Inc. v. Guptill, 16 Wash.App. 226, 231-32, 554 P.2d 359 (1976) (insurer's notice of cancellation to insured was sufficient to cover the lack of notice by the premium finance company). In Guptill, this Court interpreted RCW 48.56.110(4) as imposing a duty upon the insurer to "give any notice required to governmental agencies, mortgagees, or other third parties...." Guptill, 16 Wash.App. at 231;, 554 P.2d 359 3 Eric Mills Holmes, Holmes's Appleman on Insurance, 2d § 16.9, at 410 (1998); 6 id. § 40.17, at 490. In this instance, RCW 48.18.290 imposes the applicable restriction upon the insurer. We must read the two statutes in harmony and give effect to each. Draper Mach. Works v. Dep't of Natural Res., 117 Wash.2d 306, 313, 815 P.2d 770 (1991).
RCW 48.18.290(1) states that an insurer may not cancel a policy for nonpayment of premiums without giving 10 days notice to the "mortgagee, pledgee, or other person *1092 shown by the policy to have an interest in any loss which may occur thereunder." Olivine isat the very leastan interested person as shown by the policy because it is an additional named insured and because it owns the property protected under the policy. Therefore, United Capitol should have given notice to Olivine as an interested person. Both RCW 48.56.110(4) and RCW 48.18.290(1) contemplate that cancellation is not complete without notice to such interested third parties.
United Capitol cites a number of cases from other jurisdictions to rebut this construction of Washington statute. Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725 (2d Cir.1994); Haft v. Charter Oak Fire Ins. Co., 262 Ill.App.3d 933, 200 Ill.Dec. 504, 635 N.E.2d 843 (1994); Black v. Globe Am. Cas. Co., 19 Ohio App.3d 58, 482 N.E.2d 1278 (1984). Haft and Black are distinguishable because neither case dealt directly with a statute like RCW 48.18.290(1) that imposes a duty upon the insurer to notify interested third parties of impending cancellation. Haft, 200 Ill.Dec. 504, 635 N.E.2d at 845 (Illinois statute required the insurer to notify only the "named insured"); Black, 482 N.E.2d at 1282-283 (parties failed to cite such a statutory requirement).[1] Likewise, Nordic Leasing dealt with a different statutory schemeone involving renewal, not cancellation. Nordic Leasing, 42 F.3d at 730. Moreover, our research has revealed just as much persuasive authority from other jurisdictions to support our holding. See, e.g., Kotlar v. Hartford Fire Ins. Co., 83 Cal.App.4th 1116, 100 Cal.Rptr.2d 246, 249 (2000), rev. denied (Cal. Jan. 24, 2001) (notice of cancellation to lessor required); Lease Car of Am., Inc. v. Rahn, 419 Mich. 48, 347 N.W.2d 444 (1984) (insurance company must provide notice of cancellation to lessor); see also Mark Pomerantz, Note, Recognizing the Unique Status of Additional Named Insureds, 53 Fordham L.Rev. 117, 139 (1984) (an additional named insured should receive advance notice of cancellation). But see Douglas R. Richmond, The Additional Problems of Additional Insureds, 33 Tort & Ins. L.J. 945, 947-948 (1998) (an additional named insured should not have a right to receive notice of cancellation).
Public policy considerations also support an interpretation requiring the insurance company to provide notice of cancellation to interested parties. It is unreasonable to place the heavy burden on the lessor to regularly confirm whether the lessee has paid its insurance premium. Kotlar, 100 Cal.Rptr.2d at 250; see also Nordic Leasing, 42 F.3d at 737 (Pierce, J., dissenting). Instead, the insurance company should read the policy and endorsements, including additional named insureds, and simply provide the proper notice of cancellation to each person shown by the policy to have an interest in any loss. RCW 48.18.290(1)(b). We conclude that RCW 48.18.290(1) and RCW 48.56.110(4) require this construction.
United Capitol contends that RCW 48.18.290 does not apply because TEPCO (on behalf of Clearwater) cancelled the policy and created a presumption that cancellation was effective on behalf of all named insureds. As United Capitol points out, RCW 48.18.300(3) provides that the surrender of a policy to the insurer by any interested person named therein creates a presumption that all named persons concur in the surrender. United Capitol fails to cite to the record to provide proof of such surrender. Because there is no citation to the record in its briefing, we need not consider this issue any further. RAP 10.3(a)(5); State v. Wheaton, 121 Wash.2d 347, 365, 850 P.2d 507 (1993); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
United Capitol also argues that the cancellation of the policy was proper because the premium was not paid, citing Safeco Ins. Co. v. Irish, 37 Wash.App. 554, 558, 681 P.2d 1294 (1984). In Irish, the insurance company mailed a notice of cancellation to the insured. Irish, 37 Wash.App. at 556, 681 P.2d 1294. The Court of Appeals construed the cancellation notice as being merely a reminder to reinstate a policy that had already lapsed. Irish, 37 Wash.App. at 557-58, 681 P.2d 1294. In doing so, the Court *1093 articulated that, as a general rule, failure to pay a renewal premium by the due date results in a lapse of coverage at the end of the policy period. Irish, 37 Wash.App. at 558, 681 P.2d 1294. The Court did not discuss the type of cancellation notice required by RCW 48.18.290(1) and RCW 48.56.110(4). Irish is simply not applicable.
Next, United Capitol asserts that the cancellation of the policy was proper based on policy language. An appellate court will not consider an argument unsupported by citations to authority or to the record, or otherwise inadequately briefed. RAP 10.3(a)(5); Wheaton, 121 Wash.2d at 365, 850 P.2d 507; Cowiche, 118 Wash.2d at 809, 828 P.2d 549; State v. Lord; 117 Wash.2d 829, 853, 822 P.2d 177 (1991). In making its argument based on policy language, United Capitol fails to cite to any authority or to relevant portions of the record. Because the briefing on this argument is inadequate for proper review, we decline to consider it. Following RCW 48.56.110(4) and RCW 48.18.290(1), we conclude that summary judgment was proper on this issue.

II.

Damages
United Capitol argues that the trial court erred in granting summary judgment on the issue of damages. Again, an appellate court will not consider an assignment of error unsupported by citation of authority. RAP 10.3(a)(5); Cowiche, 118 Wash.2d at 809, 828 P.2d 549. Because United Capitol fails to cite any authority to support this assignment of error, we do not reach this issue.

III.

Attorney Fees
Finally, both parties dispute the attorney fee award. United Capitol maintains that the trial court should have limited the award to the lodestar amount, while Olivine argues that it is entitled to a larger amount based on its contingency agreement and Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991). In Olympic S.S., the Washington Supreme Court held that an insured deserves an award of attorney fees when the insurer compels the insured to sue for the benefit of the insurance contract. Olympic S.S., 117 Wash.2d at 53, 811 P.2d 673. United Capitol agrees that Olivine deserves an attorney fee award based on Olympic S.S., but contends that the trial court erred in making an upward adjustment from the lodestar based on the contingency agreement. We review the lodestar adjustment for abuse of discretion. McGreevy v. Oregon Mut. Ins. Co., 90 Wash.App. 283, 294, 951 P.2d 798 (1998).
A trial court may adjust the lodestar to reflect the contingent nature of success or the quality of work performed. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 336, 858 P.2d 1054 (1993); Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 598, 675 P.2d 193 (1983). The rationale behind this adjustment is to compensate attorneys for the risk they bear in the event the litigation is unsuccessful and the attorneys obtain no fee for their time and effort. Bowers, 100 Wash.2d at 598-99, 675 P.2d 193. To account for this risk factor, the trial court should evaluate the likelihood of success at the outset of the litigation and apply the factor only to time expended before assurance of recovery. Bowers, 100 Wash.2d at 598-99, 675 P.2d 193.
Here, Olivine retained its attorneys on a contingency basis. As the trial court correctly found, the main issue presented is one of first impression. Therefore, the likelihood of success was debatable at the outset. Even though the trial court granted summary judgment to Olivine on the issue of coverage fairly early in the litigation, United Capitol continued to contest coverage until the trial court granted the second summary judgment. Normally, we would remand the fee award to the trial court for entry of findings and conclusions that segregate and adjust only time expended before summary judgment on coverage. See Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998) (without an adequate record to review a fee award, an appellate court must remand to the trial court to develop such a record). But, because coverage was at issue throughout the entire case, the trial court *1094 correctly applied the risk factor to the entire lodestar.
Olivine asks this Court to increase the trial court's adjustment of the lodestar. As grounds for an increased adjustment, Olivine cites the contingency agreement in addition to various other factors: the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the amount of recovery; the experience, reputation and ability of the lawyers; and the overall success of the party claiming the attorney fee award. As stated previously, however, a trial court may adjust the lodestar based only on the contingent nature of success and the quality of work performed. Fisons, 122 Wash.2d at 336, 858 P.2d 1054; Bowers, 100 Wash.2d at 598, 675 P.2d 193. According to Bowers, the second basis is rare because the reasonable hourly rate should almost always reflect the quality of work. Bowers, 100 Wash.2d at 599, 675 P.2d 193. Upon reviewing the record and billings, we conclude that the trial court did not abuse its discretion in setting the adjustment.

CONCLUSION
When a premium finance company cancels an insurance policy for nonpayment of premiums, as the case here, the insurer must comply with all notice requirements. RCW 48.18.290(1) requires the insurer to give notice of cancellation to parties shown by the policy to have an interest in any loss. United Capitol failed to give a notice of cancellation to Olivine, the owner of the insured property and an additional named insured. Olivine was an interested party that deserved a notice of cancellation. As for attorney fees, adjusting the lodestar upward was proper based on the contingent nature of success. Any further increase is unnecessary.
We Affirm.
BECKER, A.C.J., concurs.
AGID, C.J. (dissenting).
I respectfully dissent. In my view, the majority improperly conflates two separate chapters in the statutes governing cancellation of insurance policies to achieve a result not required by the Legislature in the statutory scheme. It takes the requirement of RCW 48.18.290(1) that, when an insurer cancels the policy it must notify additional interested parties, and imposes it on RCW 48.56.110(4), the statutory provision governing cancellation by a premium finance company which does not require notice. This case involves cancellation by a premium finance company, and the statute governing that circumstance presumes consent to the cancellation by all interested parties. RCW 48.56.110(4) nowhere requires the insurance company to notify anyone when the premium finance company cancels the policy. Thus, there is no legal basis on which to impose the requirements of an entirely different statute, RCW 48.18.290(1), on United Capitol.
Nor is the majority's decision supported by logic. If the Legislature wished to require someone to notify additional interested parties when a premium insurance company cancels a policy, its logical choice would be the premium insurance company or the named insured. It was Clearwater Resource Recovery that undertook the contract obligation to insure Olivine for damage caused by Clearwater's use of its property. When it defaulted on its payment obligation Clearwater, not United Capitol, was responsible for Olivine's loss. In the absence of a legislative decision to require the insurer to give notice when the insured or its agent cancels the policy, this court should not usurp that body's policy-making role. Neither Ins. Mgmt., Inc. v. Guptill, 16 Wash.App. 226, 554 P.2d 359 (1976), nor RCW 48.18.290(1) mandates the majority's result.
NOTES
[1] Black is further distinguishable because, even if notice was defective, the record showed that the insured had actual notice of cancellation. Black, 482 N.E.2d at 1281.